UZAL PIERSON v. GEORGE CLAYES, BENJAMIN HARRINGTON
and LUTHER M. HAGAR.

### (In Chancery.)

The right of a defendant in chancery to have his answer taken as evidence,
is co-extensive with his obligation to answer.

When defendant, in answer to a bill, set forth a certain proposition in wri-
ting, made by him, and then stated conversations and facts to obviate
and avoid the effects of the same, such conversations, &c., must be
proved.

A court of chancery will open a decree of foreclosure when the failure of
the mortgagor to pay, according to the decree, was not through his neg-
ligence or default, but in consequence of propositions of settlement and
payment, to be carried into effect after the time of payment had expired,
and the failure to perform was on the part of the mortgagee.

While a bill is pending to be relieved from the forfeiture for not paying the
first instalment, the failure of the mortgagor to pay a second instalment,
falling due while the bill is pending, is no obstacle to his obtaining relief.

THIS was an appeal from a decree of the court of chan-
cery, dismissing the orator's bill.

The orator in his bill charged, in substance, that, on the
24th of June, 1836, he mortgaged a certain tract of land in
Shelburne, to the defendant, Benjamin Harrington, to secure
the payment of $1100, and that, on the 13th of October
following, he mortgaged the same land to the defendant,
Clayes, to secure the payment of $1600; that, at the
August term, 1840, of the court of chancery in Chittenden
county, Harrington, by his solicitor, Charles Russell, obtained
a decree of foreclosure on said mortgage to him, by which it
was decreed that the orator should pay the sum of $992.82,
and interest, by the 12th day of September, 1841, and
$400.80 by the 24th of June, 1842; that, immediately after
filing said bill, Harrington assigned his interest in the mort-
gaged premises, to the defendant, Luther M. Hagar, who
thereupon, executed an assurance to Clayes that he would
release to him the said premises, in case the title should be-
come absolute, under the decree; that, for the purpose of

CHITTENDEN, paying the amount of said mortgage to Harrington, and
January, also the amount of the mortgage to Clayes, the orator
1843. entered into an arrangement with Henry S. Morse and Sam-
Pierson uel Fletcher, by which they proposed to execute to Clayes,
v. in satisfaction of both of said mortgages, their notes of hand,
Clayes et al. one for the sum of $1000, payable in the month of Decem-
ber, 1841, and another for $2000, payable in one year from
that time ;. and that, on the 11th of September, 1841—the
day previous to that fixed in the decree of foreclosure, for
the payment of the first instalment—Morse addressed a let-
ter to Clayes making a proposition to that effect, which was,
by the orator, handed to him on the same day ; that it was
then and there agreed between the orator and Clayes that the
notes of Morse and Fletcher should be so received by Clayes,
and that the balance of said mortgages should be paid by the
note of the orator, with surety ; that thereupon Clayes ad-
dressed to Morse the following letter :

"To Henry S. Morse. Dear Sir : I have received a line
'from you by Mr. Uzal Pierson, saying that Samuel Fletcher
'and yourself would pay me one thousand dollars in Decem-
'ber next, and two thousand dollars more within a year from
'that time, if you can have the place clear—that is to say,
'Benjamin Harrington's and my mortgage discharged. The
'amount of Benjamin Harrington's and my own mortgage,
'including interest and cost, will be about thirty two hundred
'dollars.

'L. M. Hagar has obtained Harrington's quit-claim deed,
'and an assignment of all his interest. Hagar has agreed to
'deed all his interest to me,. if the property falls into his
'hands. Then I shall be prepared to deed the same, by re-
'leasing and quit-claiming all my right, title and interest to
'the same, on condition that I receive Samuel Fletcher's and
'your joint notes with interest from date, for one thousand
'dollars payable in the month of December next, and the
'balance, say about twenty two hundred dollars, within one
'year from date. GEORGE CLAYES.
'Burlington, September 11, 1841.
'I will endeavor to be at Shelburne, and attend to the
'business, on Tuesday next. G. CLAYES."

And the orator further alleged that, on the Tuesday men-
tioned in the said letter of Clayes, being the 14th of Septem-

ber, he, the orator, the said Morse and Fletcher, and the said Clayes met at Shelburne, and that Morse and Fletcher were then and there ready to execute their notes as aforesaid ; that Clayes professed to be ready to receive the same and discharge the mortgages, but delayed until near the close of the day, and then proposed to continue the negotiation to the next day ; but, as Morse could not attend on the next day, that it was agreed to meet on the 21st of the same September to complete the arrangement.

And the orator further alleged that the said parties met on the 21st of September, when Morse and Fletcher were ready to execute their notes for $1000 payable in December then next, and $2000 payable in one year from that time, and that the orator was ready to execute his note, with said Morse as surety, for the balance ; but that Clayes, on inquiring whether Morse and Fletcher were to give the orator a written license to redeem the land which Clayes was about to convey to them, and learning that such license was not to be given, thereupon refused to receive said notes or to discharge the said mortgages, although he was then and there particularly requested by the orator so to do.

And the orator further alleged that, on the 24th of the same September, a writ of possession was prayed out in the name of Harrington, upon the decree, and that, thereupon, he was in danger of being dispossessed of said premises.

And the orator further alleged that, on the 6th of October, 1841, he tendered to the clerk of the court, making said decree, the sum of $1063 in payment of the sum so decreed to be paid on the said 12th of September, and also made a like tender to Charles Russell, Esq., the attorney and solicitor of said Harrington, he not being within the state.

Whereupon the orator prayed that the said decree, so far as related to the sum decreed to be paid on the said 12th of September, might be annulled, and further time allowed to redeem, &c., and for general relief.

The defendant, Clayes, in his answer, admitted the facts alleged by the orator concerning the mortgage to Harrington —the subsequent mortgage to himself—the decree of foreclosure—the assignment to Hagar, and the execution by Hagar of the assurance to convey. He also admitted that he received, on the 11th of September, 1841, from said

Morse, by the hand of the orator, a written proposal for the execution of notes in payment of said mortgages, which was in the words and figures following :

" Mr. George Clayes. Dear Sir : Mr. Samuel Fletcher and ' myself will pay you, for Mr. Pierson, one thousand dollars ' in the month of December next, and the remainder of your ' debt against Pierson, to the amount of two thousand dollars, ' within one year from that time, if we can have the place ' clear—that is to say the B. Harrington mortgage and yours ' discharged, and have the place clear. If these proposals ' are accepted, you will send word, by Mr. Pierson, what day ' you will meet us at Hall's, and do the business.

          ' Shelburne, Sept. 11, 1841.          H. S. Morse."

And the said defendant alleged that, on reading said letter, he informed the orator that he should not accept of the proposition contained therein, as it embraced no stipulation for the payment of interest on the notes to be given ; that the $3000 was less than the amount of the mortgages, and that he would not give the time of credit proposed ; that, thereupon, the orator requested him to make a proposition to said Morse, whereupon he addressed to him the letter set forth in the orator's bill, and read, and delivered the same to the orator.

And the said defendant denied that, on the said 11th of September, or at any time before the expiration of the time for the payment of the first instalment in said decree, he made any agreement to accept the notes of said Morse and Fletcher for the sum of $3000, and the note of the orator with surety, for the balance of said mortgages, or that he made any other proposition than that contained in said letter to Morse. He also denied that, in proposing to defer the payment beyond the said 12th of September, or in fixing the time for executing the arrangement beyond that day, he had any intention to induce the orator to suffer the decree to expire; but, on the contrary, he alleged that at the time of delivering to the orator the said letter to Morse, he expressly said to him, that, unless the proposition thus made to Morse should be accepted before the expiration of the time for the payment of the first instalment, or the said instalment should be paid according to the decree, he, Clayes, would hold the land by virtue of said decree ; that he then and there advised

.the orator to ascertain immediately, and before the expiration of the decree, whether the said proposition would be accepted, to which the orator replied that he would so ascertain ; and that the suggestion in his letter to Morse, of the time to close the business, was made at the orator's request, for the mere purpose of executing the necessary papers, in case the proposition should be accepted.

And the said defendant further alleged that he met the orator, and the said Morse, on the 14th of September, and informed them that he was ready to comply with his said proposition to Morse ; that Morse said they would not accept said proposition, and would not give their notes for more than $3.000, and would not give them payable at so short a period as specified in the proposal, but that they would give them on interest ; that, thereupon, Clayes proposed that he would take the notes of Morse and Fletcher with interest, for $3.000, payable at the times mentioned in the written proposition of Morse, and the balance of the two mortgage debts amounting to $150, in the joint note of the orator and Morse, or of the orator and either of certain other individuals, whom he named in his said answer ; and that he and Hagar were ready, and offered to convey their right in the premises to Morse and Fletcher, on a compliance with said proposition, but that the orator neglected to effect such compliance.

And the said Clayes, further alleged that on that occasion, a question arose between the orator and said Morse and Fletcher, whether, upon the contemplated conveyance to them, a right to redeem was to be reserved to the orator, and that, on their declaration that no such right was to be reserved, the orator refused to go any further with the arrangement, or to procure or suffer the same to be executed.

And the said Clayes denied that Morse and Fletcher were ready and offered, on that day, to complete and execute the arrangement ; and he also denied that he proposed or agreed to a postponement of the execution of it, to any future day, but admitted that, on the separation of the parties, in reply to a question by Morse whether he would agree to have the time to complete the business extended another week, he said that, if he should feel at the end of a week as he then

did, he might do as he had proposed, but would not agree to extend the time or abide by his proposition at a future day.

And the said Clayes further alleged that, at the request of the orator made to him on the 17th of said September, he consented to meet him and Morse on the 21st, for the purpose of consulting upon the subject of an arrangement, concerning said land; and admitted, that, on that occasion Morse did offer to deliver to him, his and Fletcher's notes for $3.000 payable at the times specified in Morse's written proposition with interest, and also to sign with the orator a note for the balance, if he, Clayes, would convey the premises as had been proposed; that he did inquire if, in case such conveyance should be made, the orator was to have any right of redemption, or whether the title was to be absolute in Morse and Fletcher, and, that on being informed, that the orator would have no right to redeem, he declined to accept the notes and execute the conveyance, but alleged that he offered to execute it, and procure a release from Hagar if the orator could have the right of redemption.

And the said Clayes admitted that, on the 24th of said September, a writ of possession was taken out upon said decree, which was executed on the 2d of October following, by putting Hagar into possession of the premises; and that, on or about the 5th of the same October, Hagar conveyed to him, all his right, title and interest in the premises.

And the said Clayes alleged, further, that, no tender of the amount of said decree, or any part thereof, had, at any time, been made to him, nor to any one authorized by him to receive the same; and that he was informed and believed that no such tender had been made either to Hagar or Harrington, or to any agent or attorney of them or either of them, authorized to receive the same, or to any person to whom such tender might legally be made.

The answer was traversed, and testimony taken. The facts found from the testimony sufficiently appear from the opinion of the court.

*C. Adams* for orator.

It is not necessary that a contract should have been actually concluded by the parties before the 12th September, in order to lay an equitable foundation for vacating the decree.

Transfers by operation of law must be free from all person-al interference. Any interference, by the party, inconsistent with the passing the estate by the decree, or any inducement held out, calculated or intended to relax the efforts of the orator to redeem, or which have had the effect to postpone the payment, will be sufficient to vitiate the decree.

It is evident the parties mutually made and received propositions which, if executed, would have had the effect of satisfying both mortgages. The letters of Mr. Morse and the defendant are conclusive of this. The letter of Mr. Morse, having been adopted and communicated by Pierson, is to be taken as his proposition. If the letter of Clayes was not an acceptance of the proposition contained in Mr. Morse's letter, it was, at least, a proposition naturally calculated to throw the orator off his guard, and did in fact postpone the payment.

If this proposition was made with a fraudulent intent, that alone would defeat all claim of title under the decree. If made in good faith, Clayes cannot hold the land, unless the failure of satisfaction was owing to Pierson wholly. It is no answer that he said during the negotiation, that he would not proceed, for it is clear that the negotiation was continued, and it distinctly appears, by the evidence of Mr. Morse, as well as by the defendant's answer, that, in the end, Pierson was ready, and offered to perform to the very letter, and that Clayes refused.

The legal effect of Clayes' proposition was: I will receive satisfaction in notes ; you may take time to procure them ; and if, in the end, the notes are not received, the money shall be received, *nunc pro tunc.* The proposition must have, this latitude of construction, if it was made with an honest intention ; and if not, his cunning will not aid him.

Again : The fact that Clayes' proposition for satisfaction of the mortgage was, by himself, refused, creates an implied right in Pierson to pay the money on the decree, in a reasonable time thereafter ; and this, without any regard to the ground on which the refusal was founded, and without considering whether Clayes had any just grounds of refusal or not. The evidence is undisputed that the amount of the decree was tendered on the 6th of October.

In considering the case, all the propositions whensoever

CHITTENDEN,
January,
1843.

Pierson
v.
Clayes et al.

made, and all the acts and doings of the parties, are to be considered and construed as parts of one transaction. The matter will then stand on this wise. On the 11th of September, Pierson proposes to pay both mortgages by two notes of $3000. Clayes agrees to take the notes, but requires the interest to be included, and that a small balance, claimed to be due, should be added; and proposes a day for the execution, beyond the decree. The modification is accepted. Pierson proffers the notes in strict conformity to Clayes' terms, but Clayes refuses to take them and enters into immediate possession of the land. Clayes can take nothing by Piersons' failure to pay the sum decreed to be paid in June, 1842. Before that time, Clayes had taken possession of the land, and claimed to be the absolute owner of it, under the decree.

It is obvious that Clayes cannot hold the land for the non-payment of the sum decreed to be paid in September, 1841, and still claim the instalment decreed to be paid in June, 1842. The taking the land under a decree is a satisfaction of the whole decree; and it must have the same effect, whether the decree be for one payment or more. How far the taking the land without a decree is a satisfaction of the mortgage debt, is a different question; but that the taking of the land by virtue of a decree, operates to extinguish the decree is too plain for discussion.

The argument that we have lost the land by failing to pay the amount decreed to. be paid in June, 1842, rests on the admission that the possession of Clayes was wrongful. Is it true, then, that a wrongful possession is not an improper interference · with our right to redeem? It is a fraudulent attempt to prevent our redeeming, too barefaced to be tolerated, in a court of chancery. The case of *Smalley & Adams* v. *Hickok* has no analogy to this case. The right of redemption in that case, was gone; and it is not intimated that there had been any interference of any kind. The land had become absolute in Hickok, and he might well sell it.

*G. P. Marsh & Hyde & Peck*, for defendants.

All that appears from the case, prior to the expiration of the decree, is a proposition to Clayes, which he then refused to accept, and a proposition by him made at orator's request, to Morse, in the writing set forth in the bill, which was

handed to the orator, who was, however, at the same time <span>Chittenden, *January*, 1843.</span> told that unless Morse accepted the proposition before the decree expired, Clayes would hold the decree absolute. <span>Pierson *v.* Clayes *et al.*</span> What took place after the decree expired has no operation upon the decree. *Smalley & Adams* v. *Hickok*, 12 Vt. R. 153.

The whole case shows that Clayes acted with fairness throughout, and was ready on the 14th September, after the decree expired, to vary his proposition, so that orator could comply, and that the orator refused to enter into any arrangement. The first proposition of Clayes' was never accepted. There is no evidence to show that orator was deceived and misled, or let the decree expire under any misapprehension or mistake, either as between himself and Clayes, or between himself and Morse. If the title has become perfect under the decree, without the fault of Clayes, the court have no power to divest it, merely from the misfortune, much less from the folly or negligence of the orator.

To open a decree, merely for an unsuccessful attempt at negotiation, would be establishing a principle detrimental to mortgagors, as no mortgagee would dare even to receive a proposition, or attempt a negotiation, even at the solicitation of the mortgagor. The attempted arrangement was wholly in the character of a purchase by Morse and Fletcher, in which the orator had no interest, and hence he suffered no injury, and cannot sustain the bill.

The orator must make such a case in proof, as he has made in his bill. He alleges a contract, and none is proved.

The answer on this point is responsive to the bill. Clayes was bound, not only to admit or deny the contract set up, but if he denied it, he was bound to go further, and state all that was said and done, that the court may see whether it amounts to a contract or tended to deceive or mislead the orator. The right of Clayes to use the answer as evidence, is co-extensive with his obligation to answer. *Woodcock* v. *Bennett*, 1 Cow. 711; *Smith* v. *Clark*, 4 Paige, 368; *Field* v. *Holland*, 6 Cranch, 24.

No tender has been made. Charles Russell, as solicitor to foreclose, was not authorized to accept the money after the decree expired, more especially as he had no agency *in*, or knowledge *of*, the negotiation. Orator had notice before the

tender, that Hagar had a deed from Harrington, and Clayes a deed or contract from Hagar. See testimony of Ch's Adams, and Clayes' answer.

If the attempted arrangement saved the forfeiture on the first instalment, the title has become absolute by the non-payment of the instalment falling due in June, 1842. *Smalley & Adams* v. *Hickok*, 12 Vt. R. 153. The attempt at negotiation can have no greater effect than a payment of the first instalment by orator and acceptance by Clayes.

The opionion of the court was delivered by

WILLIAMS, Ch. J.—The object of this bill is, to enable the orator to redeem a certain mortgage, executed by him to Benjamin Harrington, on which a decree of foreclosure has, heretofore, been made, in the court of chancery, and to open the decree for that purpose. It is stated that, in the year 1836, the orator mortgaged a certain tract of land in Shelburne, to the said Harrington, for the sum of eleven hundred dollars, and that, afterwards, on the 13th of October, 1836, he mortgaged the same land, with some other, to George Clayes, one of the defendants; that, at the August term of the court of chancery, in 1840, a decree of foreclosure, was obtained on the mortgage executed to Harrington, by which Pierson was decreed to pay the sum of nine hundred ninety two dollars eightytwo cents, by the 12th of September, 1841, and the residue, by the 24th of June, 1842. It is stated, that this mortgage became the property of the defendant, Clayes, and in consequence of a negotiation, between the orator, Pierson, and the defendant, Clayes, the amount due on the 12th September, 1841, was not paid; that the failure to complete the negotiation, was not on the part of Pierson, but on the part of Clayes. This bill Clayes has answered, and the answer is traversed.

A decree of foreclosure, according to our practice, is an absolute and final decree in the first instance; and unless the court of chancery could relieve against such a decree, when the mortgagor had failed to perform, without any fault on his part, and in consequence of the acts of the mortgagee, there would be a manifest failure of justice; and although the court would step with great caution in relieving a mortgagor from a decree of foreclosure, yet there may be circumstances

which would require them to relieve him from the forfeiture, when the mortgagee can be sure of receiving his debt. We think these circumstances exist in the case before us.

On the 11th day of September, 1841, Pierson carried to Clayes, who had control of the Harrington mortgage, a proposition from Morse, not only to satisfy that mortgage, but also the one to Clayes, a great part of which was not then due. To this proposition Clayes returned an answer, not accepting the proposition of Morse, but making another, not greatly varying from it, which is in the following words :

" To Henry S. Morse. Dear Sir : I have received a line
' from you by Mr. Uzal Pierson, saying that Samuel Fletcher
' and yourself would pay me one thousand dollars in December
' next, and two thousand dollars more within a year from that
' time, if you can have the place clear, that is to say, Benja-
' min Harrington's and my mortgage discharged. The amount
' of Benj. Harrington's and my mortgage, including interest
' and cost, will be about thirty-two hundred dollars.

' L. M. Hagar has obtained Harrington's quit-claim deed,
' and an assignment of all his interest. Hagar has agreed to
' deed all his interest to me if the property falls into his
' hands ; then I shall be prepared to deed the same, by re-
' leasing and quit-claiming all my right, title and interest to
' the same, on condition that I receive Samuel Fletcher's and
' your joint note, with interest from date, for one thousand
' dollars, payable in the month of December next, and the
' balance, say about twenty-two hundred dollars, within one
' year from date.                    GEORGE CLAYES.

' Burlington, Sept. 11, 1841.
' I will endeavor to be at Shelburne and attend to the bu-
' siness on Tuesday next.                    G. CLAYES."

This proposition was, to receive the amount of both mortgages, and Mr. Clayes fixed upon a time, two days after the time fixed in the decree for the payment of the first instalment. It is very obvious that, if Mr. Pierson, after receiving this letter from Clayes, had immediately redeemed the mortgage, on the 12th of September, two days before the time Mr. Clayes had proposed to attend to it, it would have defeated that arrangement, and would have been inconsistent with the negotiation then going on, to pay to Mr. Clayes both of the mortgages.

The answer of Mr. Clayes, stating his conversation with Pierson in relation to receiving an immediate answer, and that he should hold the land, unless his proposition was accepted and complied with, before the expiration of the decree, is not proved, and is not responsive to the bill. It is true the right of a defendant, to have his answer taken as evidence, is co-extensive with his obligation to answer; yet in this case, the proposition in writing, in the letter the defendant, Clayes, wrote to Morse, is very explicit, and these conversations, which are set up to obviate the effect of it, are not called for by the bill, and cannot be considered as proved by the answer, but must be proved by other evidence.

If the failure to comply with the proposition of Clayes, had been on the part of the orator, he would not have been entitled to any relief against the decree. A proposition for a settlement, or to give further time, or to substitute any other security, made by a mortgagee who has a decree of foreclosure, will not entitle the mortgagor to open the decree, unless, in order to carry it into effect, something is to be done, at a time after the day fixed for redemption; and not, in that case, if the failure to perform is on the part of the mortgagor.

It appears the parties met on the 14th of September, and Pierson then refused or neglected to complete the arrangement; but a further day, to wit, the 21st September, was then agreed on for the parties to meet on this negotiation, at which time all the propositions of Clayes were acceded to, and Clayes refused to ratify and execute the same. Immediately on this, Pierson took all necessary steps to preserve his property from being forfeited, and to tender and pay the amount then due; but, as the day of redemption had then expired, the clerk was not authorized to receive the amount, and discharge the decree.

There appears to have been no negligence on the part of Pierson; and it is very apparent, that, in consequence of this negotiation, and the expectation of settling both mortgages with Clayes, on the terms proposed by him, he has permitted the time fixed in the decree to expire, and if not relieved, the farm, worth, as estimated, from $2,500 to $5,000, will be taken in satisfaction of the mortgage to Harrington, and

leave him liable on the notes given to Clayes, for which the sec-
ond mortgage was executed. In the case of *Williams* v.
*Dale,* 3 Johns. Ch. R. 290, the chancellor gave relief in a
case, where the equity was not as strong as in this case ; and
we think the orator should be relieved from the forfeiture,
and the decree of foreclosure opened.

With respect to the failure of the orator to pay the sec-
ond instalment, while this bill was pending, we think it can-
not, and ought not to have any effect whatever. In the first
place, it is not in evidence before us, that there has been
any such failure. Nor is there anything, either in the bill,
or answer, which would require taking any proof to that ef-
fect. And furthermore, while this bill was pending, the ob-
ject of which was, to be relieved against the consequence of
not paying the first instalment, it would have been neither
consonant with equity or justice, that he should pay an addi-
tional instalment, while yet uncertain whether he could get
any relief from the consequence of not paying the first. The
decree of the chancellor, is, therefore, reversed, and it will
be remitted to the court of chancery, to ascertain the sum
now due on the mortgage to Harrington, deducting the costs
of the orator in this court, and to permit the orator to re-
deem, on the payment of that sum, by a day to be fixed by
him.