JOSEPH BLODGETT, ELI BLODGETT, WILLIAM NUTTING, and LEVI WASHBURN AND WILLIAM NUTTING, Administrators of SETH WASHBURN, *v.* THOMAS S. HOBART, CALEB HOBART AND JOHN HOBART;

And

THOMAS S. HOBART, CALEB HOBART AND JOHN HOBART *v.* JOSEPH BLODGETT, ELI BLODGETT, WILLIAM NUTTING, IRA BURRAGE, and LEVI WASHBURN AND WILLIAM NUTTING, Administrators of SETH WASHBURN.

Where A. and B. agreed to mortgage certain real estate owned by them jointly, and also certain real estate owned by them individually, to secure the mortgagees for signing a promissory note with them to a third person, it being understood, that A. was to secure one third and B. two thirds of the amount, and, by mistake, a portion of B's real estate, intended to be mortgaged, was not included in the mortgage deed, and A. had paid to the mortgagees his portion of the mortgage debt and had received from them a release of his individual real estate, it was held, in a suit in chancery brought by the mortgagees against B., to obtain a reform of the mortgage, that A. was a competent witness for the orators,—and especially, as no objection had been taken by the defendant for want of parties.

When it is established, that, by mistake, a part of the lands agreed to be mortgaged were not included in the mortgage deed, a court of chancery will, on a bill brought by the mortgagees for that purpose, order the mortgage to be so reformed, as to include the land omitted.

And the mortgage will be ordered to be so reformed, even as against subsequent purchasers of the omitted portion of the land, unless it appears, that they are *bona fide* purchasers, for a valuable consideration, without notice.

And if the mistake was mutual, and be not discovered until after a decree of foreclosure has been obtained upon the mortgage and the time fixed by the decree for the payment of the mortgage debt has expired, and the mortgage be then ordered to be reformed, the decree of foreclosure will be opened, so as to permit the mortgagor to redeem the entire premises by payment of the entire sum due upon the mortgage.

And although the mortgagees, after the expiration of the decree of foreclosure, and before the discovery of the mistake, conveyed the mortgaged premises, by warrantee deed, and by the same description given in the mortgage deed, to a third person, for a valuable consideration, both parties supposing that this included the land subsequently discovered to be omitted, and that

the mortgagees had an indefeasible title to it, yet this will not preclude the mortgagor from his right to have the entire decree opened and additional time given to redeem, unless such third person became a purchaser of the premises by the advice and consent of the mortgagor himself. And such grantee of the mortgagees is not a competent witness for the mortgagees, to prove that fact.

Though the mortgagee, after decree of foreclosure and before the expiration of the time fixed for redemption, may have promised to give to the mortgagor farther time for redemption, after the expiration of the decree, yet this will not entitle the mortgagor subsequently to claim, in a court of chancery, that the decree be opened, if he have made no offer to the mortgagee to perform according to the terms of the agreement.

As a general rule, the answer of one defendant in chancery is not evidence for or against his co-defendant.

And if the defendants have brought a cross bill, including, as defendants thereto, the original orators and a third person, who is so interested in the subject matter of controversy on the original bill, as not to be a competent witness therein for the orators, the answer of such third person to the cross bill can in no way be used by the orators in the original bill to sustain the case made by them on that bill.

And the orators, in this case, having brought their bill to obtain a reform of their mortgage, after the decree of foreclosure obtained upon it had expired, and having insisted, that the mortgagor was bound to reform the mortgage without having any additional time for redemption, were allowed no costs, notwithstanding the reform was ordered; and the mortgagor was allowed no costs of the court of chancery upon his cross bill, by which he claimed additional time for redemption,—which was granted to him; but, the reform having been ordered by the court of chancery and the cross bill dismissed, the mortgagor, who appealed from the decree of the court of chancery, was allowed his costs, which accrued in this court, to be deducted from the amount found due upon the mortgage.

APPEAL from the court of chancery. The orators alleged in their bill, in substance, that in 1836 Thomas S. Hobart and William Foster applied to the orators Joseph Blodgett, Eli Blodgett and William Nutting, and to the intestate Seth Washburn to sign with them a note for three thousand dollars to the Bank of Orange County, and agreed to secure them therefor by a mortgage of the real estate owned by them jointly, and also by a mortgage of certain real estate owned by them individually,—it being understood, that Hobart was

to secure two thirds of the amount and Foster the remaining one third; that accordingly, on the second day of April, 1836, the note was signed, and a mortgage was executed jointly by Hobart and Foster, which was intended to include all the real estate, which Hobart and Foster had agreed to mortgage, and which it was supposed at the time did include it; but that, by mistake, such a description was inserted in the mortgage deed, as excluded two pieces of land belonging to Hobart, one containing two and a half acres and the other about fifty acres; that the orators were ultimately compelled to pay the note signed by them, and that Foster repaid to them the one third, which he was to secure, and they released to him the real estate owned by him individually; that subsequently they brought an action of ejectment against Hobart, founded upon the mortgage, and time was given for redemption, which time expired, without payment of the mortgage debt; that the orators assured Hobart, that, if the premises could be sold for more than sufficient to pay the mortgage debt and a compensation for their trouble, he might receive the surplus; that accordingly, at Hobart's request, they made effort to sell the premises, and did eventually, by Hobart's advice and consent, sell the premises to one Ira Burrage, by deed with covenants of warranty, but *giving the same* description of the premises, as was contained in the mortgage deed, all the parties at that time supposing, that that description included all the land which Hobart had originally agreed to mortgage, and that possession of the premises was given by the orators to Burrage; that soon after this Hobart discovered the mistake as to the description of the premises in the mortgage, and then fraudulently executed a mortgage deed of the omitted parcels of land to the defendant John Hobart, to secure a pretended debt of one thousand dollars, and afterwards executed a quit claim deed of the same parcels of land to the defendant Caleb Hobart. And the orators charged, that John Hobart and Caleb Hobart were fully cognizant of the agreement of Thomas S. Hobart to include those parcels of land in his mortgage to the orators, and of the fact, that the orators and Thomas S. Hobart supposed and believed, at the time of the sale to Burrage, and previous to that time, that those parcels of land were covered by the mortgage.

And the orators prayed, that the mortgage deed might be re-formed and the title to the omitted parcels of land be confirmed to them.

As to the defendant John Hobart the bill was taken as confessed. Caleb Hobart answered, admitting that he had received from Thomas S. Hobart a quitclaim deed of the parcels of land, claimed by the orators to have been omitted by mistake from their mortgage, subject to a mortgage of the same, for one thousand dollars, previously executed by Thomas S. Hobart to John Hobart, and that he allowed to Thomas S. Hobart therefor, " on matters of deal between them," two hundred dollars; that he knew, previous to receiving said deed, that the orators supposed that their mortgage covered these parcels, but that he became satisfied, from an examination of the records, that they were mistaken; but he denied having any knowledge, that Thomas S. Hobart ever agreed to include these parcels of land in his mortgage to the orators, or that the orators so claimed.

Thomas S. Hobart answered, admitting many of the allegations in the bill, but denying that he ever agreed specifically to include the parcels of land in question in his mortgage to the orators, but averring, that he agreed to give them security, to their satisfaction, for signing the note specified in the bill, and that for this purpose he laid before them his title deeds, and that the orators included in the mortgage such parcels as they pleased, and such as he supposed they were satisfied with, and that he never made any examination of the description contained in the mortgage, nor thought particularly about it, until about the time the equity of redemption expired upon the mortgage. He also denied, that there was any agreement, or understanding, that he was to secure two thirds of the amount of the note and Foster one third; and also denied, that he ever consented or advised to the sale to Burrage.

The defendants also filed their cross bill against the orators in the original bill, joining Burrage, also, as a defendant, in which they alleged, that Foster had received, from the avails of the note signed by the orators, five hundred dollars, for which he never accounted to Thomas S. Hobart, and that Hobart informed the orators of this fact, prior to their releasing the individual real estate of Foster, which was included in the mortgage to the orators, and that

53

he requested the orators not to release that estate, until Foster repaid all the money he had received ; but that the orators, notwithstanding this, did release to Foster his individual estate, upon payment by him of the sum of five hundred and ninety dollars, leaving a large sum unpaid, which had been used in the business of Hobart and Foster for Foster's benefit.

The defendant's also alleged, in their cross bill, that, previous to the expiration of the time fixed by the decree of the court for the redemption of the premises, the orators assured Thomas S. Hobart, that no advantage would be taken of him, although the money was not paid by the expiration of the decree, provided it was paid by the time the orators were called upon to pay a note for which they had become liable in consequence of signing the original note to the bank, and that, in consequence of this assurance, the time was permitted to expire without payment. And they prayed, that the amount, which Foster was still liable to pay towards the mortgage debt, and the value of Foster's individual real estate, released by the mortgagees, might be ascertained, and the amount, or so much thereof as was necessary, be applied in part satisfaction of the mortgage debt, and that the orators might be ordered to receive the balance of the debt and release all their claim upon the premises described in the mortgage.

The orators filed their several answers to the cross bill, denying that they were ever informed, or had knowledge, that Foster received any more than his proportion of the avails of the note signed by the orators, and averring, that, when they received of Foster the sum paid by him and released his real estate, they supposed that they were acting in accordance with the wishes of Thomas S. Hobart. They also denied, that they ever in any manner induced Hobart to suffer the time, fixed for the redemption of the premises, to expire without payment. And Ira Burrage alleged in his answer, that he purchased the premises, supposing that they included the parcels of land in question, and that he made such purchase with the consent and by the advice of Thomas S. Hobart.

Testimony was taken upon both sides; and, among other witnesses, the orators examined William Foster, who testified as to the original agreement, made between himself, Thomas S. Hobart, and the orators. The orators also filed the testimony of Ira Bur-

rage, as to the matters put in issue upon the original bill. The facts proved in the case are sufficiently detailed in the opinion of the court.

The court of chancery,—HEBARD, [Chancellor,—decreed, that the cross bill be dismissed, and that the defendants therein recover their costs; also, that the defendants in the original bill should execute to the orators therein a quitclaim deed of the parcels of land, omitted in the description contained in the mortgage deed, and should be forever enjoined from setting up any title thereto, and should pay to the orators their costs.

From this decree the defendants appealed. And now the case came on for hearing upon the bill and cross bill.

*W. Nutting* and *L. B. Peck* for orators.

*E. Weston* and *L. B. Vilas* for defendants.

The opinion of the court was delivered by

BENNETT, J.   The primary object of the original bill is to reform a mortgage deed, executed by Thomas S. Hobart and William Foster on the second day of April, 1836, to the orators, to indemnify them against signing a note to the Bank of Orange County, as sureties, for Hobart & Foster, who were at that time the owners of a woolen factory, which they were carrying on.   It seems, that Hobart owned two thirds of the establishment and Foster the remaining one third, and that the money raised from them was for their use in the same proportions, and that Hobart was to secure the orators for two thirds of the amount of the note, which they had signed to the bank, by a mortgage of his private real estate and of his interest in the factory establishment, and that Foster was to secure them for the other third by a mortgage of his own farm, and of his interest in the factory.   Instead of separate mortgages, Hobart and Foster joined in making one mortgage to the orators.   The orators now claim, that, by mistake, this mortgage does not embrace all the lands, which it was intended should have been pledged by Hobart, as a security for the two thirds of the note signed by them.   The orators claim, that the mortgage should include what is called Hobart's home farm containing about fifty acres, and also another certain piece of two and a half acres, described in the bill.

The first question for consideration is, have the orators succeeded in establishing the mistake ?   Foster, who is not a party to the bill, has been examined as one of the witnesses on this point, by the orators, and the defendants now move, in pursuance of their motion in the court below, to suppress his testimony on the ground of interest. We cannot see, that the defendants can object to the competency of Foster.   If there be three obligors, and the action be brought against one, the others are witnesses on the part of the plaintiff to prove the execution of the bond.   *Lockart* v. *Graham,* 1 Str. 35.   See, also, *York* v. *Blott,* 5 M. & S. 71, and *Hudson* v. *Robinson,* 4 M. & S. 476.   Though we should regard Hobart and Foster as co-principals for the entire sum of the bank note, and the orators as their co-sureties for the same, still, Foster would have no interest in the event of this suit, which could disqualify him.   If the sureties have been damnified, and they take their indemnity against Hobart, or his property, Foster, if he has not already paid his proportion of the note, would be bound to Hobart for contribution.

Whether it would have been proper to have made Foster a party to this bill, it is unnecessary to consider.   This has not been insisted upon by way of demurrer to the bill, plea, or answer ; or even on the hearing.   Certainly, in such case, this court would not reverse the decree of the chancellor, in a case in which a decree could be made, though all the proper persons were not before the court.   See *Cannon et al.* v. *Norton,* 14 Vt. 178.

We think it is fully established, that there was a mistake in drawing the mortgage deed, and that it was the intention of the parties to have included Hobart's home farm, and also the two and a half acres, within the description.   Foster testifies, that Hobart agreed with the orators to mortgage all of his real estate; and the subsequent conduct and repeated declarations of Hobart, as testified to by a great number of witnesses, go to establish the fact, that he supposed it was included in the deed.   It is evident, that Hobart supposed, that his whole property was included in the decree of foreclosure, obtained in the action of ejectment, while that was running. There is a strong probability, that it would have been the intention of the parties to have included it.   Hobart, in his answer, says he was ready to give as much security, as was wanted.   The property actually mortgaged by Hobart was but a lean security for the two

thousand dollars, and the part omitted by far the most reliable part of it. Besides, the answer of Hobart, upon this point, is evasive. We think, from the whole evidence in the case, that the mistake is established and the substance of the bill proved. It was a mistake in Mr. Nutting, in making the description in the deed so as not to include the home farm, and a mistake in Hobart, in supposing it so drawn, as to include it, when in point of fact it was not included.

We think the mortgage deed must be so reformed and set up against these three defendants, as to include the lands of Thomas S. Hobart, which were omitted in the description.

There is no pretence, that Caleb Hobart and John Hobart can be regarded as *bona fide* purchasers, without notice of the orators' claim. The bill has been taken as confessed by John Hobart, and it is not proved that Caleb purchased for a valuable consideration, without notice. The result, then, is, that the mortgage is, by a decree of the court of chancery, to be so reformed as to include the home farm of Hobart, and the two and a half acres, and make it such an instrument, as the parties to it intended it should have been.

The effect of this must be, to leave in the mortgagor an equity of redemption, at least, in the home farm, and the other piece, unless there is something in the case to show that he should be debarred from this right. It will not do to create a mortgage and foreclose the equity of redemption at one and the same breath. It is alleged in the bill, that the whole property was sold and conveyed by the orators to Ira Burrage, by and with the consent and advice of Hobart himself; but there is no evidence to prove those allegations, except what comes from Burrage himself; and he is not a competent witness.

The cross bill is brought by the three Hobarts against the orators and Burrage, to whom the orators have conveyed the premises. The object of the cross bill is to obtain relief, against the orators in the original bill, from the effect of their release to Foster of his farm, which was included in the mortgage; and also to obtain a decree, that the orators in the cross bill may be let in to redeem the lands foreclosed in the action of ejectment.

No claim is made out against the orators in the original bill, growing out of their release to Foster of his home farm. It was the understanding between Hobart and Foster, when they obtained

their security to the bank, that Foster was to have one third and Hobart two thirds of the money obtained, and that they were to give security to their sureties in that proportion. No evidence establishes the fact, that Foster had more than one third of the money; and if so, there is no evidence, that the orators in the original bill had any knowledge of it. Besides, they allege in their own bill, that Foster had paid them what was supposed to be his part to pay, before the release of his farm was given to him, and that they retained the mortgage upon his part of the factory, to secure the balance due from him, if there should prove to be any.

We do not think, that the equity of redemption in the premises foreclosed in the action of ejectment is necessarily opened. This depends mainly upon the answer of Mr. Nutting to the cross bill and the testimony of Mr. Boardman. Suppose from this answer and testimony we should find, that an agreement was made, before the time of redemption had run, that the money might be paid afterwards; yet the testimony shows, that there was no offer to pay it, after the decree had expired. In *Pierson* v. *Clayes et al.*, 15 Vt. 104, the court held, that, if the mortgagor failed to perform on his part some act, which was to be done after the time of redemption had run, he would not be entitled to any relief against the decree; though, *if he* had tendered a performance, the equity of redemption might have been opened.

It is urged in argument, that the orators in the cross bill should be allowed no equity of redemption in the home farm of Thomas S. Hobart, or the other piece of land. It is said, both parties supposed that these pieces were included in the mortgage, and that they were also included in the decree in the action of ejectment, and that consequently the effect should be the same, as if such had been the case. Though both parties were doubtless at that time under a mistake in relation to this point, yet we think this cannot debar Hobart of his equity of redemption. Neither of these tracts were embraced within the declaration in the action of ejectment, and the decree, in its terms, in no way related to them. The title to real estate cannot be transferred from one to the other by such means. The *mistake* was mutual, and there is no pretence of fraud on either side.

If it had been proved, that the mortgagees had executed an absolute deed to Burrage by the consent and approbation of Hobart, it might with some propriety be argued, that Hobart should thereby be concluded from all equity of redemption. There is no proof of such fact, except what comes from Burrage himself; and a motion has been made to suppress his testimony. We think it is quite clear, that he is not a competent witness. The deed to this witness has the same description of the lands conveyed, as was contained in the original mortgage to his grantors. It is admitted, that there was a mistake in the description in this deed. Burrage has an equitable title, as against his grantors, in the home farm of Thomas S. Hobart, and also in the two and a half acres; and chancery would, upon the facts proved in this case, reform his deed. Whether his equitable title would ripen into a legal title, by a reform of his deed, must depend upon the title of his grantors. Consequently, he is interested in establishing their title, and his testimony must be suppressed.

It is said, we should act upon the answer of Burrage to the cross bill, and that this shows the *privity* of Hobart to the sale to Burrage. His answer is not evidence in favor of his co-defendants in the cross bill, to debar Hobart from his equity of redemption. The general rule is, that the answer of one defendant is not evidence for, or against, his co-defendants. There may be exceptions; as in cases where the matter of controversy arises from a *joint contract*. But here Hobart's right to redeem is a matter solely between him and his mortgagees, though Burrage has become interested, as to the existence of such right. The orators in the original bill must rely upon the case which is there made, to debar Hobart from his equity of redemption. The answer of Burrage to the cross bill cannot, in any point of view, be used as evidence to support the original bill.

There is, then, no evidence, to show that Hobart was *privy* to the sale by his mortgagees to Burrage. It would be going too far, to *create* a mortgage and cut off the equity of redemption at a single stroke. To warrant it, the mortgagors, must have done some act to conclude himself from the right. As Hobart must be allowed to redeem the home farm and the two and a half acres, we think the equity of redemption should also be opened as to his other property, foreclosed in the action of ejectment.

The result, then, is, that the decree of the chancellor upon the original bill is reversed, and a decree entered up, that the mortgage deed be reformed, and that it be set up against Thomas S. Hobart and his grantees, Caleb Hobart and John Hobart, as a mortgage including the home farm of Thomas S. Hobart and the two and a half acres, as well as the premises therein described.

The decree of the chancellor, also, upon the cross bill must be reversed, and the orators be let in to redeem the whole premises mortgaged by Thomas S. Hobart, by paying such sum, as shall be found due from him, by such time as the chancellor shall direct, and, in default thereof, be foreclosed. We think the orators in the cross bill should not have the premises, foreclosed in the action of ejectment, applied at their value upon the debt, and have a right to redeem the other pieces upon paying the balance; but they must pay the whole debt.

The costs of the appellants in the supreme court should be deducted from the sum found due, and no costs be decreed to either party in the court of chancery. The orators in the original bill should not have costs, inasmuch as they insisted, that Hobart was bound to correct the mistake, without reserving to himself an equity of redemption; and upon common principles, the orators in the cross bill should not have costs, upon being let in to redeem upon paying what shall be found due.