Brinkerhoff, J.
It is hardly possible to imagine a case resting-on stronger or clearer principles of natural equity than that made- *462, 463 by tbe petition and admitted by the demurrer. The plaintiff ought, unquestionably, to be relieved, ^unless, in the peculiar posi- [462 tion in which an innocent and not unfrequent mistake has placed him, he is precluded from its attainment by some inexorable rule of law.
At the outset of our inquiries, it is proper to notice: 1. That, there being in the petition a prayer for alternative and general relief, this court, and that to which it may be remanded, will be restricted to no particular mode or measure of relief, but will be entirely at liberty to adapt either to what may be demanded by the particular circumstances of the case, as they may be developed; and, 2. That the children and heirs of Sovil, having succeeded to-his rights and equities, and no more, and there having been, so far as appears, no alienation of, or contract affecting, the land which Sovil did own, and intended to mortgage, intervening, prior to the commencement of this proceeding, we are entirely unembarrassed by any claims in favor of any third party; and the case, therefore, is to be decided with a view solely to the relations and consequent equities of the original parties to the contract of mortgage.
The plaintiff, alleging a mutual mistake of the parties in the description intended to identify the entire subject-matter of the mortgage — -a mistake vital to the entire contract — seeks, on the ground of that mutual mistake, to reform that contract, so as to make it what the parties intended and justice required it should be, and what, had no mistake of fact occurred, it would have been; and then to enforce the contract thus .reformed. Whether this can- be done, is the first question to bo considered.
Whether a plaintiff,' seeking affirmative relief, can thus reform and then enforce a written contract, on the strength of parol proof alone, and against an answer denying the alleged mistake, is a question in reference to which, it must be admitted, there is a decided and irreconcilable conflict of authorities. • In the affirmative, we have the ^opinions of those eminent chancellors, Kent [463 and Story, given after mature and repeated deliberation. Gillespie v. Moore, 2 Johns. Ch. 585; Keisselback v. Livingston, 4 Ib. 144; Story’s Eq. Juris., sec. 153, et seq. The correctness of these opinions seems also to have been uniformly held or recognized in Ohio, Hunt & Phillips v. Freeman, 1 Ohio, 490; Young v. Miller, 10 Ohio, 88, 90; McLouth v. Rathbone, 19 Ohio, 21, 24. And we may fairly infer that this holding has commended itself to legislative approval, *464 for, in the midst of this course of judicial action, the act of March 22, 1849, “to give additional security to land titles” (Swan’s Stat. 314), was passed, providing that errors, mistakes, and defects in the •deed or other conveyance of husband and wife, thereafter to be executed, and intended to convey or incumber the lands or estate of •the wife, or her right of dower in the lands of her husband, might be corrected, amended, and relieved, against, in the same manner ¡and to the same extent as the deeds or conveyances of other persons.
It is admitted everywhere that a defendant in equity may allege, and prove by parol, a mistake in a contract sought to be enforced against him; and we are unable to perceive any good reason why a distinction should be made between a -plaintiff and defendant in cases of this kind. That it is difficult or impossible to reconcile this doctrine with the letter of the statute for the prevention of frauds and perjuries, may be admitted; but it would be quite as •difficult to reconcile with that statute the unquestioned doctrine that a parol contract for the sale of lands, when partly performed, is not within its operation. In both cases we-proceed on the ground, that to allow the statute to operate would be to give success and effect ■to the very evil the statute was designed to prevent. And, so far as a uniform course of judicial determination can settle anything, 464] it *would seem to be as well settled, at least in Ohio, that mutual mistake of the parties to a contract concerning lands will take the case out of the statute of frauds, as that a part performance will do so.
It may indeed be a question whether the ingrafting, by judicial decision, of any exceptions on the strict and literal provisions ■of the statute, was warranted by sound policy. But this was a question not as much for us as for those who have preceded us. The .principle and practice of allowing such exceptions has now been •carried too far to admit of their being shaken, except by direct legislation ; and the equity of the established exceptions to the operation •of the statute, appeals too strongly to the general conscience to warrant the anticipation of any such interference.
Contracts concerning lands, then, may be reformed, on the ground •of-mutual mistake of the parties to them; and when thus reformed may, in the same proceeding, be enforced; and such mistake may be proved by parol. But it ought not to be forgotten that the contract, as committed to writing, is properly presumed to be the best evidence of the real intention of the parties, and therefore, before *465, 466 •courts proceed to administer a remedy for the alleged mistake, they ■.should require its existence to be established by very clear and satisfactory evidence.
But in this case, the mistake not only occurs in the mortgage, but has been carried into the decree and sale of the premises described ■in the mistaken mortgage; and it is contended that the mortgage is merged in the decree, and the decree satisfied by the sale. And this presents the second question on which we are to pass.
Here was a total mistake in the description of the land intended to be mortgaged. The mortgage was intended to embrace premises which the mortgagor did own, but by ^mutual mistake it de- [465 scribed only a parcel of land which the mortgagor never did own, and to which he never had or pretended to have any claim. The ■demurrer to the petition admits this; and if it were denied, and •clearly and satisfactorily proved, the case would be the same. Let the mortgage be reformed, and made to conform to the intention of the parties; how then stands the case? The reformed mortgage is not merged in any decree, for there is no decree for the sale of any premises described in the mortgage as corrected and reformed. The ■decree may be satisfied, at least pro tanto, to the amount of the sale; but the decree was based on the mistaken, and not on the true, mortgage; the sale was of land not embraced in the true mortgage; no money or other valuable thing was ever received by the plaintiff; the whole proceeding is infected by the original mistake, and is "therefore baseless, unsubstantial, and nugatory.
In the conclusion at which we have arrived on the question, we are not without the support of highly respectable authority. The case of Blodgett et al. v. Hobart et al., 18 Vt. 414, presented a question exactly analogous to that now before us, except that there was a decree of absolute foreclosure, instead of a decree for sale of the mortgaged premises, as in this case; and the misdescription went to a part, instead .of the whole, of the mortgaged premises. It was there held that, “ if the mistake was mutual, and be not discovered until after a decree of foreclosure has been obtained upon the mortgage, and the time fixed by the decree for the payment of the mortgage debt has expired, and the mortgage be then ordered to be reformed, the decree of foreclosure will be opened, so as to permit the mortgagor to redeem the entire premises by payment of the entire sum due upon the mortgage.” And the cautious and carefully con-sidered observations of *Ranney, J, in Hollister v. Dillon, 4 [466 *467 Ohio St. 209, are of like- tendency. We are of opinion, therefore, that the decree and sale under the mistaken mortgage constitute no-just obstacle to the plaintiff’s relief; especially as he will, by the record of this case, be forever estopped from claiming any title to premises purchased under the decree.
At present the case stands on demurrer to the petition, which admits the facts to be as alleged by the plaintiff. Of course it is impossible to foresee what developments may be made in the proof, if proof shall be taken in the court below, after the case shall be remanded, or what modified form it may assume; but if, on the final hearing of the case, the facts shall satisfactorily appear to be substantially as they are alleged in the petition, the decree, after reforming the mortgage, ought to order an appraisement and sale of the premises, as described in the mortgage as corrected; because those premises have never yet been advertised or sold; the attempt to advertise and sell having been totally mistaken and nugatory. But the sale, if made, must be made subject to the widow’s right of dower in the premises. The mortgage can not be reformed aa Against her. Carr v. Williams, 10 Ohio, 305; Purcell v. Goshorn and Wife, 17 Ohio, 105. And the difficulty is not reached by the act “ to give additional security to land titles,” before referred to, as its provisions apply only to deeds and conveyances to be executed subsequent to its passage; and the mortgage here sought to be reformed was executed prior to that time.
Judgment reversed, and case remanded for further proceedings.
Bartley, O. J., and Swan, Bowen, and Scott, JJ., concurred.