186 So. 689

## FEDERAL LAND BANK OF NEW ORLEANS v. WILLIAMS et al.

### 4 Div. 33.

Supreme Court of Alabama.

Dec. 22, 1938.

Rehearing Denied Feb. 16, 1939.

Sentell & Sentell, of Luverne, for appellant.

Thos. B. Hill, Jr., and Wm. Inge Hill, both of Montgomery, for appellees.

GARDNER, Justice.

The bill is one for reformation of a mortgage on certain described real estate, executed in October, 1922, by Mrs. S. M. Williams, as owner, and her husband, J. W. Williams, and, also, the foreclosure deed executed to complainant, the mortgagee and purchaser at the foreclosure sale. The bill meets all requirements of our decisions, and is properly maintainable by this complainant. Woodlawn Realty & Dev. Co. v. Hawkins, 186 Ala. 234, 65 So. 183; Section 6960 et seq., Code 1923.

The question here for determination is one of fact, deducible from evidence taken entirely by depositions.

The record is rather voluminous: a detailed discussion of the proof would serve no useful purpose, and such has not been our custom since the passage of the Act of 1915, page 594, now embraced in Section 10336, Code of 1923. A brief outline will suffice.

In March, 1922, Mrs. S. M. Williams made application for a loan to The Federal Land Bank, and signed, by mark, the written application therefor. The due execution of this application is not questioned, nor its correctness challenged. In this application Mrs. Williams specified in

two instances that she lived on this land. She was then living in the main dwelling on lot 53, in the town of Dozier. It could not be questioned that this lot and adjoining farm, all enclosed by a common fence, constituted Mrs. Williams' homestead, and the application gave every evidence of the fact that she intended to mortgage her homestead. Warren v. Crow, 198 Ala. 670, 73 So. 989; Patterson v. First National Bank, 229 Ala. 406, 157 So. 446, 447.

And in answer to questions concerning permanent improvements and their value, the application discloses the main dwelling of $1,500 valuation, and $2,600 insurance then being carried, and two other dwellings valued at $1,000, all of which logically points to the inclusion of lots 53 and 54 in the loan.

Applicant also answered there were four dependable wells on the land. There was a flowing well on lot 53, and three surface wells elsewhere on the property, to which the answer of twenty feet "to good water" clearly has reference.

She stated there were ninety-six acres under fence, and it appears the boundary lines of the property are in large part the fence lines. As to the eastern line the fence has been standing for more than twenty years. The time of acquisition of the property (1915) and the total number of acres as ninety-nine, indicate likewise that the lots were intended to be included. Just below are the words "three [acres] of this land is in town lots leaving ninety-six acres farm land," upon which defendants lay some stress as favorable to their contention.

But considering this statement in connection with the entire application and the facts and circumstances disclosed by the proof, we are impressed to the contrary, and that in fact they add weight to complainant's theory of the case.

Mrs. Williams agreed in her application to maintain insurance on permanent insurable improvements to the required amount, and so agreed also in the mortgage. Insurance was so carried on the insurable property, with loss payable clause in favor of complainant from the time of the execution of the mortgage. The husband, J. W. Williams, admits that the bank carried insurance on the main dwelling house. And in July, 1934, complainant received a letter with Mrs. Williams' name signed thereto, but written by her son Love, who lived with his parents, and acted as her agent in regard to the land, answering previous letter "in regard to the insurance on Loan 28917," expressing regret over inability to send check, and requesting that the property be insured on a five year basis, and the cost thereof be charged to her account.

Just here it may be well to state the proof, without controversy, shows that the husband, J. W. Williams, and the son Love handled Mrs. Williams' business and property for her, and were her agents with full authority in the premises. Either the husband or the son acted for her, with her knowledge and consent, throughout the entire transaction, and she is responsible for their actions in the premises. 53 Corpus Juris 987; 2 Corpus Juris 832.

When this letter was written, it satisfactorily appears from the proof that the only insurable buildings were the main dwelling on lot 53, and the tenant house on adjoining lot 54.

Turner, the tax assessor, testified that in December, 1933, when the property of Mrs. Williams was being assessed, J. W. and Love Williams were in the office, and that Love, on inquiry as to lots 53 and 54, stated they were embraced in the assessment of the land which was given in as ninety-six acres, and that he, Turner, made a note of this on the assessment sheet under the head of "Remarks."

We have not overlooked defendants' contention as to the absence of this notation on the carbon copy, but we are constrained to believe Turner correctly stated the facts. But we think further detailed discussion may well be omitted. Suffice it to say the evidence has been carefully studied and considered in the light of helpful briefs by counsel for the respective parties, and we have constantly kept in mind the high degree of proof required in cases of this character. Holland Blow Stave Co. v. Barclay, 193 Ala. 200, 69 So. 118; Patterson v. First National Bank, supra.

We are persuaded the parties had in mind no exact number of acres, but the homestead of the mortgagor, which upon survey following foreclosure appears insufficiently described so as to embrace these lots, particularly lot 53 upon which Mrs. Williams was residing at the time she made her application for a loan. This was of course a part of her homestead, a part of

the farm under a common enclosure, and the acts and conduct of all parties to the transaction lead to the conclusion that it was the homestead which was intended to be described in the mortgage. A study of this record has led us irresistibly to this conclusion, and we conclude complainant has met the high degree of proof required.

Defendants insist complainant should be denied relief upon the theory of estoppel, and rely upon Henderson v. Wilson, 203 Ala. 474, 83 So. 484, in support of this contention. But the facts of the two cases are widely different, and we do not think the cited authority furnishes an analogy here.

 Whether in the instant case any one' has suffered an injury or gained an advantage by reason of the incomplete description in the mortgage and its foreclosure sale is left entirely to speculation. But that question aside, we are not persuaded, as insisted, that complainant was aware of the mistake at the time of the foreclosure, and that the bank had every reason to understand any suggestion in 1933 on the part of the mortgagor's husband or son, that the lots were not included in the mortgage, had been withdrawn, and any such insistence abandoned. But we need not further discuss this contention of defendants. The facts wholly fail to sustain any theory of estoppel.

It results from our deliberation that complainant is entitled to relief it seeks and to the corrected description as set out in the second paragraph of the bill. The decree rendered is not in accord with these views. It will therefore be reversed and one rendered granting the relief prayed for.

Reversed and rendered.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.

On Rehearing.

GARDNER, Justice.

For the first time on application for rehearing, appellees suggest in brief the reformation should be confined to the mortgage, and should not embrace the foreclosure deed,—the effect of which would be to restore the equity of redemption.

We have examined the cited cases (Provost v. Rebman, 21 Iowa 419; McKissick v. Mill Owners' Mut. Fire Ins. Co., 50 Iowa 116; Carrigg v. Mechanics' Bank, 136 Iowa 261, 111 N.W. 329; Marks v. Taylor, 23 Utah 470, 65 P. 203; Fisher v. Villamil, 62 Fla. 472, 56 So. 559, 39 L.R.A.,N.S., 90, Ann.Cas.1913D, 1003; Blodgett v. Hobart, 18 Vt. 414; Alfalfa Lumber Co. v. Mudgett, Tex.Civ.App., 199 S.W. 337): the larger number of which deal with judicial foreclosure proceedings, such as considered by this Court in Stephenson v. Harris, 131 Ala. 470, 31 So. 445,—the Florida court in the Fisher case, supra, quoting therefrom. See, also, 73 A.L.R. 629.

 We have no such question here, and we think it clear enough that under our statute (section 6960, Code 1923) and our decisions (Goulding Fertilizer Co. v. Blanchard, 178 Ala. 298, 59 So. 485; Greene v. Dickson, 119 Ala. 346, 24 So. 422, 72 Am.St.Rep. 920) the complainant is entitled, under the facts, to a decree of reformation both as to the mortgage and the foreclosure deed.

This conclusion is reached without a concession that the question may in this manner be first presented on this application. Of this we entertain some doubt, but need express no opinion thereon.

Application overruled.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.