## Case No. 13,643.

SUTHERLAND et al v. LAKE SUPERIOR SHIP CANAL, RAILROAD & IRON CO. et al.

[9 N. B. R. 298; [1] 1 Cent. Law J. 127.]

Circuit Court, E. D. Michigan. 1874.

MORTGAGE — SUBSEQUENT INCUMBRANCES — PROPERTY IN HANDS OF RECEIVER—BANKRUPTCY —PENDING SUIT IN STATE COURT.

1. To a bill by a junior mortgagee against a mortgagor or his assignee in bankruptcy, prior encumbrancers are necessary parties where there is substantial doubt as to the amounts which are due them, or the property covered by their liens.

2. A court of equity will in no instance expose to sale an interest capable of being reduced to certainty where any doubt exists as to its character and extent.

3. Where a subsequent encumbrancer is already impleaded by a prior one, a subsequent original bill, on his part, will not be sustained to foreclose his mortgage. Full relief may be granted in the first suit, either with or without a cross-bill, as exigencies exist.

4. Where property is in the hands of a receiver no party having interest therein, and much less will actual parties, be permitted, without leave of court, to seek an enforcement of their rights by an original suit. Such leave will in no case be granted where the relief sought is competent in the pending litigation.

[1] [Reprinted from 9 N. B. R. 298, by permission.]

5. Where a subsequent mortgage trustee, who had appeared and submitted to a receiver of the estate, resigned his trust pendente lite, and his successor, without leave, filed an original bill of foreclosure. it was held to be unnecessary and unwarranted. Such suit would be permanently stayed on summary application, or, upon answer and proofs, dismissed at the hearing. The rights of such successor need not be noticed in the original suit, as he would be bound by the decree.

6. A court of equity may sell mortgaged premises free from encumbrances, remitting the lien holders to the proceeds, at the suits of subsequent encumbrancers or other parties having right in the equity of redemption. The power in this regard, so frequently exercised in bankruptcy, is but an application there of this principle.

7. The late decision in Marshall v. Knox [16 Wall. (83 U. S.) 551], denying the power of the district court to invade the jurisdiction of a state tribunal, where property is in its actual custody, under proceedings commenced anterior to the bankruptcy, does not deny the power of the circuit court to order all matters pending therein to be adjudicated in an original suit, subsequently commenced in such court by an assignee in bankruptcy. It is a mere question of practice and convenience. That the property is in the hands of the court's own receiver constitutes no exception to the rule.

8. The circuit court will entertain a bill by an assignee in bankruptcy against several mortgagors and other lien holders to ascertain the amount due, and sell all the property free from encumbrances.

9. When matters are germain to and connected with the subject of a suit they may be introduced by cross-bill although new and not mentioned in the original bill.

In equity.

The following is the substance of an opinion prepared through the aid of an amanuensis, and submitted to the judge. It has his approval as being substantially correct.

EMMONS, Circuit Judge. The property involved amounted to several millions of dollars, consisting of lands granted by congress to aid in the construction of a canal, and of the canal itself and a large quantity of personal property. July 1st, 1865, the company executed a mortgage, of which John L. Sutherland is trustee, upon part of the land and all the personal property and the canal, to secure its bonds, in the sum of five hundred thousand dollars. July 1st, 1868, it executed a mortgage, of which Lucien Birdseye is trustee, upon other lands and upon the canal and the personal property, to secure an additional issue of bonds, in the sum of five hundred thousand dollars July 1st, 1870, it executed a mortgage, of which Thomas N. McCarter is trustee, upon all the property covered by the two other mortgages, to secure a further issue of its bonds, in the amount of one million two hundred and fifty thousand dollars. May 1st, 1871, it executed a mortgage to the Union Trust Company of New York, upon all the property covered by the several other mortgages and some additional property. May 25th, 1872, a bill was filed in Sutherland's name, in this court, to foreclose his mortgage, to which the company, Birdseye and Frost, McCarter's predecessor in the trust, and the

Union Trust Company are made parties defendant. The defendants all appeared and answered. June 13th, 1872, a receiver was appointed, in the Sutherland case, of the entire property of the company and authorized to create an indebtedness of five hundred thousand dollars, to be a first lien on all the property. This was by consent of some and without opposition from any of the defendants. July 3d, 1872, a bill was filed in this court in McCarter's name (he having been duly appointed Frost's successor) to foreclose his mortgage. The mortgagor and the Union Trust Company of New York are made parties. July 5th, 1872, a bill was filed in this court, in Birdseye's name, to foreclose his mortgage. The mortgagor, McCarter and the Union Trust Company of New York are made parties. August 27th, 1872, the mortgagor was adjudicated bankrupt December 3d, 1872, George Jerome and Fernando C. Beaman were duly appointed assignees, and by supplemental bill were made parties to said several foreclosure suits. The entire property was thus in the custody of the court, through its receiver in the Sutherland case, where the subsequent bills were filed, without leave of the court being asked or obtained. Subsequently the Union Trust Company of New York filed its bill, to foreclose its mortgage, in the bankruptcy court. In reference to the amount due upon each of these successive securities, and more especially in reference to what the certificates of the receiver cover, whether all, or a part only of the property of the corporation, the widest differences exist at the bar. The assignees, after their appointment, appeared in the Sutherland, the Birdseye and the McCarter suits without setting up in either the pendency of the others, though the pendency of the Sutherland suit is expressly set up in the bills of complaint in both the Birdseye and McCarter cases, and in each it is stated that the complainant therein is made defendant in the Sutherland case, and that a receiver of the property had been appointed.

In these circumstances it was insisted by the assignees that neither Birdseye nor McCarter, being subsequent encumbrancers and already impleaded in the Sutherland suit they might have had their liens adjusted and the property which they covered sold, had a right to file either of the subsequent bills without leave of court, and thus necessitate a triple litigation. They insist further that as doubts exist in reference to the amount of the prior liens which was put in issue by the pleadings, and as to the property which the dominant one covered, it was impossible to make a proper decree under either the Birdseye or McCarter bills. As the facts upon which these equities rested were not contained in the answers and could not be administered as the pleadings in the foreclosure cases then stood, an original bill was filed by the assignees in this court, making Sutherland, Birdseye, McCarter and the Union Trust Company parties, which had for its object a sale

of the mortgaged premises free of liens, and an ascertainment of the rights of the various parties interested in the proceeds and their distribution accordingly. Upon this bill a motion was made to stay the proceedings in the foreclosure cases, which was granted. Whether this bill should be entertained, and the rights of all the parties interested in the several mortgages named should be administered in this suit, and in the meantime the foreclosure suits permanently stayed, or whether the equities should be worked out in the foreclosure suits—in one or all of them —was the general subject discussed upon the argument and submitted for decision of the court.

The motion for stay was originally made before the circuit judge, who then expressed a strong preference for the amendment of the pleadings in the Sutherland suit, in which he intimated an opinion that all the rights of the parties could be effectually secured. Full reference was made by his honor to the written judgment delivered by him some months since, when the stay of proceedings was originally granted. That opinion announced fully all opinions expressed in this. It emphatically declared the gross impropriety of suffering Birdseye or McCarter to sell the equity of redemption while prior liens existed, the extent of which was disputed both in amount and as to the property which they covered. A strong preference was then expressed for continuing the entire working of the causes in the hands of the mortgagees, who seemed to have interests so much more extensive than any other parties upon the record. The high character of their equities and the obligation of great diligence to speed the cause on the part of the assignees were therein fully recognized.

On the point of whether all the prior mortgagees might have been made parties to the McCarter bill, his honor said: "We deem it entirely clear that the prior encumbrancers, under the circumstances of this case, are necessary parties to the McCarter bill if it were proper, as it was not, to file it at all after the property which it seeks to sell was already in custodia legis."

To sustain the right to sell the equity of redemption without making prior lien holders parties, and ascertaining their rights, the counsel for the mortgagees, he said, had referred to the following, and numerous other cases: 2 Barb. Ch. 174; 1 Daniell, Ch. Prac. 373; 2 Spence, Eq. Jur. 605, 704; In re Langdale, 6 Beav. 557; Hobart v. Abbot, 2 P. Wms. 643; Williamson v. Probasco, 4 Halst. Ch. [8 N. J. Eq.] 571; Gibson v. McCormick, 10 Gill & J. 109. "We have," he said, "examined them all. They show only that subsequent encumbrancers must be parties. There is nowhere an intimation that prior ones may not and should not be impleaded whenever it is necessary to ascertain the amount which is due to them, or there is a substantial doubt as to the property covered by their liens. A mortgagor who insists that he has paid a prior encumbrance cannot be subjected to the injury of a sale while this question is in dispute."

In Findley v. Bank of U. S., 11 Wheat. [24 U. S.] 304, Marshall, C. J., says: "It cannot be doubted that Coleman (the prior mortgagee) ought regularly to have been a party defendant, and that had the existence of his mortgage been known to the court no decrees ought to have been pronounced in the cause until he was introduced into it." This was not understood as declaratory of a universal rule. It is correctly limited in Hagan v. Walker, 14 How. [55 U. S.] 29, where Curtis, J., reviews the authorities, and lays down the doctrine as announced by this court some months since at the hearing of the motion. He says: "On the other hand there are cases in which it has been declared that all encumbrancers are necessary parties. Many are collected in Story, Eq. Pl. 178, note. But we consider the true rule to be that, where it is the object of a bill to procure a sale of the land and the prior encumbrancer holds the legal title and his debt is payable, it is proper to make him a party in order that a sale may be made of the whole title. In this sense and for this purpose he may be correctly said to be a necessary party, that is, necessary to such a decree. But it is in the power of the court to order a sale subject to the prior encumbrance—a power which it will exercise in fit cases. And when the prior encumbrancer is not subject to the jurisdiction of the court, or cannot be joined without defeating its jurisdiction, and the validity of the encumbrance is admitted, it is fit to dispense with his being made a party." Galveston R. R. v. Cowdrey, 11 Wall. [78 U. S.] 459, fully authorizes every matter liquidated here to be determined in either one of the pending suits. A bill was filed by bondholders in successive mortgages, in behalf of themselves and all others, and the court holding that holders under either of the securities might intervene by cross-bill to contest the priority of anterior mortgages. To show the necessity, in many cases, of making prior mortgagees parties, he cited the following cases: Barb. Ch. Prac. 174; Story, Eq. Pl. (8th Ed.) par. 193; Clark v. Prentice, 3 Dana, 468. In McGown v. Yerks, 6 Johns. Ch. 450, Chancellor Kent refused a decree without making prior encumbrancers parties in a case where the reason for bringing them in was far less than that presented by the facts in the case before us. In Western Ins. Co. v. Eagle Fire Ins. Co., 1 Paige, 284, the court, in overruling a demurrer interposed by a prior encumbrancer to a bill filed by a junior mortgagee, declined to decide the point whether in all cases the court would decree a sale of the property free from encumbrance against the consent of the prior lien holder, but overruled the demurrer, holding that the bill was clearly maintainable for the purpose of making a better title and ascertaining the amount due. The judge observed that there was no such difficulty as this in the case now under con-

sideration; as all the bills on file ask a sale for the full amount secured by their mortgages. They not only consent to, but are all demanding decrees for immediate sale. The only question is, shall there be four lawsuits instead of one?

The counsel for the mortgagees cited Rose v. Page, 2 Sim. 471, Delabere v. Norwood, 3 Swanst. 144, and other cases, to the position that when a second mortgagee files a bill against a third mortgagee and the mortgagor, such case constitutes an exception to the rule that a prior mortgagee must be made a party, even where there is a doubt as to what the prior mortgage covers or the amount due thereon. Respecting these cases his honor said these two cases, together with the other referred to by counsel for complainants in this connection, are cited by Barb. Parties, who, on page 449, uses the language quoted in the counsel's brief in reference to this point. as does Story, J., in his Equity Pleading. It is manifest, however, that neither of these authors mean, nor do the cases which they refer to justify the conclusion, that it constitutes an exception to the universal rule, that a prior encumbrancer must be made a party when his lien is in contestation. None of the long list of books referred to by counsel, either English or American, has the slightest tendency to even qualify the rule that no sale should be suffered to take place in a court of equity where the extent and the amount of prior liens are disputed. Every elementary work referred to by counsel for mortgagees announces in the most explicit terms, rules of pleading and practice which forbid the anomalous decree he asks in the McCarter and Birdseye cases. Cases, too, have been cited, and especially commented on, which incidentally say that the holder of a prior admitted mortgage need not be made a party. Every one of them undeniably negatives the doctrine sought to be deduced from them. They clearly show that what is meant by the word "admitted" includes what is due upon the lien and what it covers. There is nowhere in judgment or in elementary book the slightest warrant for the unjust and impolitic doctrine that Birdseye and McCarter in their respective suits can sell in mass some millions of property, capable of division into suitable parcels for more judicious sale, and subject to liens uncertain in amount and as to the property which they cover. Had the proofs disclosed such a case at the final hearing, the court would of its own motion have ordered the pleadings to be amended and the proper parties brought in. It would be a gross fraud on the part of the assignee to consent to such a decree. In no other way could the court accomplish what was so well expressed by Johnson, J., in Taggart v. Caldwell, 4 Pet. [29 U. S.] 190, 9 Curt. Dec. 49: "It is not enough that a court of equity causes nothing but the interest of the proper party to change owners. Its decrees should terminate and not instigate litigation. Its sales should tempt men to sober investments

and not to wild speculation. Its process should act upon known and definite interests and not upon such as admit of no medium of estimation. It has the means of reducing every right to certainty and precision, and is therefore bound to employ those means in the exercise of its jurisdiction."

On the question of the propriety of commencing the Birdseye and McCarter suits, under the circumstances, his honor, among other things, said: The bills by Birdseye and McCarter were not only defective for want of proper parties to enable the court to make such a decree as would expose the property for sale in such conditions as would authorize purchasers to bid, but they had both been unnecessarily and improvidently commenced pendente lite without leave of court. Birdseye, and Frost, who was the predecessor of McCarter, were both impleaded and actually appeared in the Sutherland suit and were bound by the receivership. Similar action has been frequently discountenanced by courts of the highest respectability. In Wendell v. Wendell, 3 Paige, 509, where the subsequent encumbrancer was made a party to a bill to foreclose a prior mortgage, and he without leave subsequently filed a bill to foreclose his own mortgage, Chancellor Walworth charged costs against the party thus proceeding, and this where the objection was not taken in the answer. He said the whole property might have been sold and all the rights adjusted in one suit, as all the parties were before the court. To this familiar truth cases and elementary books are numerous. The doctrine is applicable to the case before us. It is true, that in this case there is some property in the Birdseye mortgage not covered by that of Sutherland; but so long as all are a common lien upon the canal and its franchises, and all have alike consented to the receivership which creates a dominant lien over all the property, this can work no practical legal consequence. If there is any doubt as to the power of the court, without cross-bills, to sell the additional assets mentioned in the subsequent mortgages, such bill would be directed to be filed.

Davis v. Gray, 16 Wall. [83 U. S.] 203, elaborately reviews the doctrines in regard to receivers in courts of equity, and lays down the undoubted rule that no party having interest in the estate, whether impleaded or not, can properly commence an original suit without leave of court. Had such leave been asked in this instance, beyond all controversy it would not have been granted, from the fact that such suits are wholly unnecessary and can tend only to make costs. Indeed, it is not perceived how it is possible to make a complete decree in either the Birdseye or the McCarter suits, and to settle the amounts due upon the previous encumbrances, in such circumstances as to give all the parties proper review in the court of last resort without making them parties in each suit where those facts are to be settled. At great length and with much earnest-

ness counsel for the mortgagee has argued that there is no objection whatever to selling property so circumstanced, subject to the rights of Sutherland and the receiver. This position is directly answered in the very full opinion of Nelson, J., in Wiswall v. Sampson, 14 How. [55 U. S.] 52. It is there stated in express terms that it is no answer to the objection that the sale is to be made subject to the rights of the receiver; that the court will not suffer a hostile claimant to be created, whose rights are to be subsequently settled in another tribunal. It is fallacy to argue that a receiver holds subject to the rights of the mortgagees only. He holds alike for all. He represents just as fully those of the assignees, of the shareholders, and the creditors as the prior lien holders; and if a sale should be ordered which was in hostility to and would dispose of the rights of those interested in the equity of redemption, this sale would be directly in hostility to the rights of the receiver who holds possession for them. To illustrate the completeness of the jurisdiction in the Sutherland suit, and how the rights might be adjusted therein, cases—Freeman v. Howe, 24 How. [65 U. S.] 450; Davis v. Gray, 16 Wall. [83 U. S.] 203; Jones v. Andrews 10 Wall. [77 U. S.] 327—were referred to and commented upon. They show that suits in reference to property in custodia legis are deemed auxiliary only to the principal cases.

His honor said it was wholly unnecessary for Sutherland in any way to notice the trustee. McCarter. He had become trustee pendente lite. It seemed extravagant to say that while his predecessor, Frost, was impleaded in the Sutherland suit and bound by the order granting a receiver, that his successor could file an original bill, without leave of court, to sell the equity of redemption without impleading the prior parties. Story. Eq. Pl. 156. "Generally speaking an assignee pendente lite need not be made a party to a bill, or be brought before the court; for every person purchasing pendente lite is treated as a purchaser with notice, and is subject to all the equities of the person under whom he claims in privity. And it would make no difference whether the assignee pendente lite be the claimant of a legal or of an equitable interest, or whether he be the assignee of the plaintiffs or the defendants. Still, however, it is often important to bring such assignee before the court as a party by a supplementary bill, in order to take away a cloud hanging over the title, or to compel the assignee to do some act, or to join in some conveyance. So that such assignee, although not a necessary party, may at the same time be a proper party, at the election of the plaintiff. And an assignee after the bill was filed, but before subpoena was served, has been held to be a necessary party." It is only in cases where the complainant parts with his interest and where defendant's rights are transferred by death or by operation of law, as by bankruptcy or the insolvent laws, that a transfer pendente lite need be noticed by litigants in court.

His honor said that among the positions taken by mortgagee's counsel which surprised him most, and to sustain which he had found the least learning, whether in judgments or elementary books, was that there exists no power in an American court of chancery to sell property covered by successive mortgages free from encumbrances, upon bills filed by junior mortgagees, by judgment creditors, or by the owner of the equity of redemption.

It has been argued that Sutherland and Birdseye were not proper parties to the suit by McCarter, because if they were brought in, there was no power on the part of the court to make any other decree than the mere one to sell this vast estate in mass, subject to prior liens which were uncertain in amount and extent. The broad ground had been taken that prior encumbrancers were not necessary parties, for the reason that there was no power to sell free from encumbrances. This power, he said, is fully conceded in Hancock v. Hancock, 22 N. Y. 568; in Gibson v. McCormick, 10 Gill & J. 65. The latter quite fully asserts and justifies the rule. It cites Elliott v. Pell, 1 Paige, 263, and Chamley v. Lord Dunsany, 2 Schoales & L. 710, 718, as sustaining such right. The only doubt is where a prior mortgagee opposes the sale because his claim is not due, or he would be injured by it; but, as before said, in these cases they all demand a sale. In Vanderkemp v. Shelton, 11 Paige, 28, a bill was filed to foreclose a junior mortgage and the prior mortgagee was made a party. The chancellor says: "The complainant's bill is properly framed for that purpose, as this is a bill for the foreclosure and sale of the equity of redemption in the mortgaged premises to satisfy the several encumbrancers thereon according to their respective priorities, and is not a mere bill to redeem. In England the court does not decree a sale of mortgaged premises, but merely allows the encumbrancer to file a bill to redeem from the first encumbrance, and that the junior encumbrancers may redeem both of the prior ones or be foreclosed. And the complainant there is in all cases required to offer to redeem the first encumbrance. But here the puisne creditor has the right to a sale of the estate to satisfy his debt after applying so much of the proceeds of the sale as may be necessary to pay the debt and costs of the prior encumbrancer; he is not required to offer to pay the first encumbrance. All the prior encumbrancer has a right to ask, even when he is in possession under his encumbrance, is that he shall not be subjected to useless costs, when the proceeds of the sale will not probably be sufficient to pay the amount of his debt with interest and the costs of foreclosure." In Hagan v. Walker, 14 How.

[55 U. S.] 29, Curtis, J., after very fully considering the subject, says: "The court will exercise its discretion whether to sell free from or subject to prior encumbrances."

The power exercised by the court of bankruptcy to sell free from encumbrances, is but an instance of a similar one familiar to the court of chancery. We should, wholly irrespective of the bankrupt law, if the facts ultimately presented warranted it, sell the entire estate free from encumbrances; it may appear that in no other way can the various interests in the equity of redemption be in the slightest degree protected.

Respecting the power of the court in exercising the functions conferred upon it by the bankrupt act, when these functions should be called into operation by proper proceedings on the part of the assignees, his honor said: "The reading of the statute which has been given by the learned counsel for the mortgagees comes too late. The numerous instances in which the district courts, originally by summary proceeding, and latterly, since that has been pronounced to be irregular, by bill, have sold property free from encumbrances, remitting lien holders to the fund in court, would, upon every rule of propriety, constrain this court to consider it as settled law until a superior tribunal shall pronounce the practice unlawful." The following cases are some only of the instances of its exercise: In re Sacchi [Case No. 12,200]; In re Alabama & F. R. R. Co., 1 N. B. R. 100[2] (Quarto); In re Kirtland [Case No. 7,851]; In re Salmons [Id. 12,268]; In re Stewart [Id. 13,418]; Foster v. Ames [Id. 4,965]; In re Barrow [Id. 1,057]; In re Kahley [Id. 7,593]; In re Columbian Metal Works [Id. 3,039]; In re New York Kerosene Oil Co. [Id. 10,206]; In re Schnepf [Id. 12,471]; Markson v. Heaney [Id. 9,098]; In re McClellan [Id. 8,694]; Davis v. Anderson [Id. 3,623]; In re Mebane [Id. 9,380]; Houston v. City Bank, 6 How. [47 U. S.] 486; Fowler v. Hart, 13 How. [54 U. S.] 373.

In a proper case he thought the circuit court would, under this act, entertain a bill in equity to ascertain the extent of liens, and to sell free of encumbrances. That a lien-holder is an adverse claimant, and that an ordinary debtor is such, was several times decided under the act of 1841 [5 Stat.

440] the language of which, so far as affects this question, is identical with that of the present law. See Mitchell v. Great Works Milling & Manuf'g Co. [Case No. 9,662]; Pritchard v. Chandler [Id. 11,436]. In Forsyth v. Woods, 11 Wall. [78 U. S.] 434, jurisdiction to recover a debt was assumed without question; and see Morgan v. Thornhill, 11 Wall. [78 U. S.] 65. In McLean v Lafayette Bank [Case No. 8,886] it is said that an assignee in bankruptcy, having a right to discharge encumbrances on the bankrupt's estate, may file his bill in chancery against all encumbrancers to ascertain the validity, priority and amount of the encumbrances.

But all this history, it is said, is rendered wholly inapplicable by the late decision in Marshall v. Knox [supra], in which it was decided that property in the custody of a state sheriff, by process anterior to the bankruptcy, could not be interfered with by a district court. But for that case, after a good many perusals of the judgments in Ex parte Christy, 3 How. [44 U. S.] 292; Peck v. Jenness, 7 How. [48 U. S.] 612; Orton v. Smith, 18 How. [59 U S.] 263; Taylor v. Carryl, 20 How. [61 U. S.] 583; Freeman v. Howe, 24 How. [65 U. S.] 450; Buck v. Colbath, 3 Wall. [70 U. S.] 334,—and the many judgments in which their doctrine has been applied and limited, he would have confidently held with so many of his brethren, of the circuit and district courts, that the bankrupt law did intend to create a complete system and enable the district court to administer all the assets of the bankrupt, irrespective of the accident of whether litigation might be pending in state tribunals concerning portions of his property. They who have so held did so in no want of familiarity with the rule which these cases affirm. It was thought that congress had exercised its undoubted power to create a complete bankrupt system, and draw instanter into the district court every right of the bankrupt. When it dissolves attachments, notwithstanding the custody of the state courts, and abrogates assignments when the property is in the hands of the assignees under state insolvent laws and full jurisdiction is expressly given to arrest all pending suits in personam at law in state tribunals, no matter when commenced, it would seem that but a small additional power is necessary to complete the wholesome and beneficial system which ought at least, he thought, to have been established by the statute. And when it is considered what Marshall v. Knox seems to concede that where judgments are confessed and levies made by way of preference in the state courts within four months preceding the bankruptcy, they may be declared void and the property seized by the bankrupt court. the remaining domain of the state tribunals which cannot be interfered with is so trivial and exceptional as to leave the inference a strong one that it was not

[2] [In the case of the Alabama & Florida Railroad Company, a voluntary bankrupt, proceedings in the state court, in behalf of some of the first mortgage bondholders, for foreclosure and sale of the road, were enjoined by an order made upon the receiver appointed by the state court, to deliver up the property of the road to the assignee, and an order for the sale of the franchise and property of the road for cash, as perishable property, fast deteriorating in value, and as the best mode of ascertaining the amount to be applied to the payment of liens, when the amount and priorities of such liens should be determined. Some of the mortgage bonds, claimed to be first liens upon the road, not having been executed in strict compliance with the law of the state, it was insisted by the bankrupt, were not liens. The second mortgage bondholders also objected to the recognition of the first mortgage bonds as liens upon the property. This question was not directly raised, and therefore not decided, but left to be determined upon decree for the distribution of the fund arising from the sales.]

intended to be protected by congress. His honor remarked that it was difficult, many times sitting in the midst of exigencies which demand a more extended power in order to secure an efficient and protective administration of right, at first to appreciate the wisdom of decisions which seemingly without necessity limit and cramp our jurisdiction. It was only when we take into consideration a series of decisions made in a long course of years that their wisdom could be fully appreciated. They have established a principle, which experience had found to be beneficent, of leaving every assumption of jurisdiction, on the part of federal tribunals, to be expressly authorized by congress. Nothing was to be taken by implication unless it was that necessary inference without which the law could not be administered. Notwithstanding the ingenious criticism of the assignee's counsel, he did not see why Marshall v. Knox does not decide that, excepting cases where a fraud upon the bankrupt law is charged, property in custodia legis by a state court was beyond the jurisdiction of the district court. "The decision in this case," he said, "goes upon the supposition that Marshall v. Knox so hold." The doctrine, however, he thought. has no application where the pending suits are in our own tribunal, and the property in the hands of our own receiver. Here no comity is to be violated. A large mass of property worth millions, encumbered by successive and doubtful liens, some upon one portion and some upon another, with bills unnecessarily and irregularly filed, he thought, within principles entirely familiar to courts of equity, and especially to the federal tribunals a bill by the assignees setting forth the entire history of the case might be authorized by the court. He did not think it necessary in this case to resort to the doctrine of ancillary or cross-bills. He had, however, had his request answered, which was made during the argument, that he might be referred to a few cases sustaining a bill in the nature of a cross-bill, in which both new parties and new matters might be added, irrespective of any power derived under the bankrupt act. The following cases were then cited and commented upon: Brown v. Story. 2 Paige. 594; Jones v. Smith, 14 Ill. 229; Blodgett v. Hobart, 18 Vt. 414; Fletchet v. Holmes, 25 Ind. 458, 468. That the time in which this may be done is within the discretion of the court, see Story. Eq. Pl. 396.

A reading of all the judgments upon this subject. with attention to the facts involved in each. will show with entire clearness that all which is meant when it is said that new parties and new subject matter cannot be introduced into a cause by cross-bill, is that it cannot be ,done when they are foreign to and not necessarily connected with the matter of the original bill.

His honor, in the progress of the opinion.

indicated his intention to make an order directing future proceedings in the several foreclosure cases. Such an order. however, was not made, but subsequently an order was entered in each of the cases vacating the previous orders staying the proceedings, leaving the counsel for the assignee to take such action. in the light of his honor's opinion, as they should deem best. It is understood that an immediate application will be made by them for leave to amend their answers, and to file a cross-bill in the Sutherland case.