FRANCIS M. QUIVEY *v.* EDEY BAKER, DEFENDANT, AND DELOS COLE, INTERVENOR

COURTS OF EQUITY REGARD THE SUBSTANCE ONLY.—If A., for his own benefit and without the knowledge of B., who paid no consideration, has a conveyance of land made to B. by a third person, a Court of equity in dealing with the transaction at the instance of creditors of A., or those claiming under him, will treat the land as the property of A., and regard him as the real party in interest.

CONVEYANCE IN FEE CARRIES AFTER-ACQUIRED TITLE.—If A., having no title, makes a conveyance in fee of land to B., and afterward for his own benefit procures the holder of the real title to make a conveyance thereof to C., (C. paying no consideration,) this conveyance to C. will, in equity, inure to the benefit of B. and his grantees in all proceedings between C. and B., or his grantees.

DEED IN FEE CARRIES AFTER-ACQUIRED TITLE TAKEN IN NAME OF STRANGER.— The principle that if a vendor convey the fee in land to which he has no title, and to which he afterwards acquires the true title, the title thus acquired shall inure to the benefit of his vendee, cannot be defeated in equity by taking the after acquired title in the name of a third person who has no real interest in the transaction.

QUITCLAIM DEED DOES NOT CARRY AFTER-ACQUIRED TITLE.—The principle that a title acquired by the vendor after a conveyance by him in fee inures to the benefit of his vendee, does not apply when the vendor's deed was a quitclaim, eved if it contains a qualified warranty against a specified adverse claim set up by a third party.

EQUITY REFORMS DECREES AND SHERIFFS' DEEDS.—A Court of equity will reform a mortgage by correcting a mistake, and after it has been merged in a decree of foreclosure, and the mortgaged property has been sold, will, if the mistake in the mortgage has been carried into the decree and Sheriff's deed, reform them. It will go back to the original mistake and correct all subsequent mistakes which grow out of it.

MISTAKE IN MORTGAGE AND DECREE OF FORECLOSURE.—If there was a mistake in the mortgage in the description of the property, and the same mistake exists in the decree and Sheriff's deed, equity will go back to the original transaction and reform all three so as to make them conform to the original intention of the parties.

JURISDICTION OF THE PERSON—JUDGMENT BY DEFAULT.—A judgment by default is valid if it contains a recital that the defendant was personally served with process, although the certificate of service of summons found in the judgment roll fails to show that the service was sufficient.

APPEAL from the District Court, Third Judicial District, Santa Clara County.

Upon the trial the defendant offered in evidence the judgment roll in the case of *Peter Quivey* v. *Joseph S. Ruckle*,

brought to foreclose the mortgage. The following is the certificate of service attached to the summons in said cause:

"I certify to having made a personal service of this summons, and a certified copy of the same, as also a certified copy of the bill of complaint, on George S. Ruckle, on the 30th day of July, 1850.

"JOHN C. HAYS, Sheriff.

"By JNO. S. POWER, Deputy."

The judgment recites:

"And it appearing to the satisfaction of the Court, upon the testimony of Jno. H. Moore, that the said Joseph S. Ruckle is a resident of this Santa Clara County, and that he has been duly served personally with process, and has previously made default herein," etc.

To the introduction of the judgment roll the plaintiff objected that the judgment was void, because it appeared by inspecting the record that the summons in the cause had never been served on Joseph S. Ruckle, but upon another person, viz: on George S. Ruckle, and because the place of service did not appear in the return, and because the officer did not state of what county he was Sheriff. The Court reserved its decision until final argument, but held in passing on the cause that the Court had no jurisdiction of the person, and gave judgment for plaintiff. The defendant and the intervenor appealed. Upon the trial below it was stipulated that this case and that of *Quivey* v. *Porter*, *ante*, should be tried together, and the testimony, so far as it was applicable, should apply to both cases.

The other facts are stated in the opinion of the Court.

*S. O. Houghton*, for Appellants.

Equity relieves against a mistake as well as against fraud in a deed or contract in writing; and parol evidence is admissible to prove the mistake, though it be denied in the answer,

and this either where the plaintiff seeks relief affirmatively on the ground of the mistake, or where the defendant sets it up as a defense, or to rebut an equity. (*Gillespie* v. *Moore,* 2 Johns. 595; *Lestrade* v. *Barth,* 19 Cal. 672.)

That a Court of equity can and will relieve against a mistake in a judgment is as well settled as that it will correct mistakes in other contracts and other muniments of title. (Story's Eq. Juris., Sec. 166; *Barnsley* v. *Powell,* 1 Ves. 119, 284, 289; *Yelton* v. *Hawkins,* 1 J. J. Marshall, 2; *Parcus* v. *Gohegan,* 1 J. J. Marshall, 133.)

*S. O. Houghton,* and *L. Archer,* also for Appellants.

By the judgment of record in the Judgment Book, plaintiff is estopped to deny the service of the summons. (See *Whitney* v. *Belden et al.,* 4 Paige, 140; *North American Coal Co.* v. *Dyett,* 4 Paige, 273; *Kelsey* v. *Abbott,* 18 Cal. 617; *Jermain* v. *Langdon,* 8 Paige, 42; *Stevenson* v. *Miller,* 2 Little, 307; 9 Barb. 500.)

*Wm. Matthews,* for Respondent.

The counsel are in the position of claiming Blackacre under a deed for the farm called Whiteacre. Peter Quivey's deed to Ward conveyed nothing but what Quivey then had. (*Cadiz* v. *Majors,* 33 Cal. 288.) The plaintiff does not claim that he himself paid any consideration for the deed to him, but he expressly admitted at the trial, and now repeats. that the *whole* consideration moved from his father, and consisted solely in the satisfaction of the two judgments held by his father against Ruckle, as aforesaid. There is no contract between the intervenor and Ruckle, the owner of the premises. The intervenor does not connect himself with Ruckle in any way. While it is true that before the mortgage passed into judgment it might have been reformed, yet when it passed into judgment it became merged therein, and its distinct existence as a security became lost. The judgment itself became valid for every purpose. (*Hahn* v. *Kelly,* 34

Cal. 391.) The intervenor has not connected himself with the mortgage debt. All he has shown is a quitclaim deed of a lot, not named in the mortgage or in the decree foreclosing it, or in the Sheriff's deed made under that decree. The only mistake, if any, which has been committed, with which the intervenor is in any form concerned, is the mistake committed by himself, in supposing that the decree of foreclosure carried title to lands not mentioned therein. This was a mistake of law, and from it there is no relief. A party buying at a judgment sale buys at his peril. (*Branham et al.* v. *The City of San José*, 24 Cal. 607; *Board of Commissioners* v. *Younger*, 29 Cal. 176.)

The summons was not served on the right person. George S. Ruckle is not Joseph S. Ruckle. In law the christian name is the true name; and George is one person and Joseph a different person. (Co. Litt. 3 *a;* 2 Th. Co. 217; *Barr* v. *Shroder*, 32 Cal. 609.)


By the Court, CROCKETT, J.:

In June, 1850, one Joseph S. Ruckle, being indebted to Peter Quivey, agreed to make a mortgage to him on certain real estate then owned by Ruckle in the City of San José to secure the debt. Among other property intended to be included in the mortgage, was the lot in contest in this case, which is Lot Six, in Block Two, Range Three North, of the base line: But the scrivener, in drawing up the mortgage, made a mistake in the description of this lot, and described it as Lot Six, in Block Three, and Range Two North, of the base line; simply transposing the numbers of the block and range. The mistake, however, appears not to have been immediately discovered, and after a time Quivey commenced his action to foreclose the mortgage, describing the property in his complaint by the same erroneous description contained in the mortgage. In the decree of foreclosure and order of sale there was the same erroneous description; but, in mak-

ing the sale, the Sheriff pointed out to the bidders the property in contest as that which he was about to sell, being ignorant of the mistake in the description.   At this sale Peter Quivey became the purchaser, and in due time obtained the Sheriff's deed, and thereupon entered into the possession of the lot in contest.   But the same erroneous description is found in this deed, which followed, in this respect, the mortgage, decree of foreclosure, and order of sale.   It further appears that there was not in San José any property corresponding to the erroneous description.   There was no Lot Six in *Block Three* and *Range Two* North, of the base line.

Subsequently Peter Quivey sold the lot to one Ward, and conveyed it to him by quitclaim deed and by a correct description; and at the same time, as the Court finds, executed and delivered to him a separate instrument, wherein he agreed that if one Chabolla, who was then claiming the lot, afterwards recovered it, he would refund to Ward the purchase money paid.   The title of Ward, by proper mesne conveyance, subsequently vested in the intervenor, Cole, who, in May, 1864, commenced an action against Ruckle, Quivey, and the Sheriff, Yontz, to correct the error in the description, and filed a proper notice of *lis pendens.*   In March, 1865, whilst said action was pending, Ruckle conveyed the lot by absolute deed to the plaintiff in this action, Francis M. Quivey, who was then a young man about twenty-three years old, and a son of said Peter Quivey.   It appears in the case that the only consideration for this conveyance was the release by Peter Quivey of the balance due to him by Ruckle of the mortgage debt and other demands; that the plaintiff paid no consideration for the conveyance, had no agency in procuring it to be made, and no knowledge of it until some time thereafter; and that the deed was taken in the name of the plaintiff at the request of his father, the said Peter Quivey.   Upon these facts the plaintiff commenced this action in the usual form against the defendant Baker to recover the possession of the lot.   But Baker was in possession only as the tenant of Cole, who thereupon intervened

in the action; and in his answer sets up as an equitable defense the facts substantially as we have recited them, and prays, as affirmative relief, that Peter Quivey be made a party to the action, and that Cole be decreed to be the owner and entitled to the possession of the lot, and that the said Quivey be decreed to have no title, and for general relief. On the trial the District Court found the facts to be substantially as above set forth, but held the decree of foreclosure and the Sheriff's deed to be void, for an alleged want of service of process on said Ruckle.

On the former hearing of this cause, and in the case of *Quivey* v. *Porter*, decided at the October Term, 1867, we held this ruling of the District Court to be erroneous, for the reasons then given, and with which we are entirely satisfied.

But it is urged by respondent's counsel that, even though the proceedings in the foreclosure suit were in other respects regular, they cannot aid the defendants, because neither the mortgage, decree of foreclosure, order of sale, or Sheriff's deed include or have any reference whatever to the lot in contest, but refer wholly to other and different property.

In considering this proposition, we shall treat the transaction as if Peter Quivey was the real plaintiff and party in interest, as he manifestly is. His son, the plaintiff, had no agency in the transaction, no knowledge of the deed until some time after it was made, and paid no consideration for it. His name was simply used by his father for his own advantage. In dealing with such transactions a Court of equity regards the substance and not the form. The rights of the intervenor, as against the plaintiff, are precisely the same, in a Court of equity, as they would have been against Peter Quivey if he had brought the action in his own name.

If the deed from Quivey to Ward had purported on its face to be a conveyance of the lot in fee, it is obvious that the title afterward acquired from Ruckle would, in equity, have inured to the benefit of Ward and his vendees, notwithstanding the deed was taken in the name of Francis M. Quivey. The salutary principle that if a vendor conveys in

fee land to which he has no title, and to which he afterward acquired the true title, that the title thus acquired shall inure to the benefit of his vendee, cannot be defeated in equity by the shallow device of taking the after acquired title in the name of a stranger who had no real interest in the transaction. But the deed from Quivey to Ward was only a quitclaim deed, accompanied by an independent and qualified covenant of warranty against a specified adverse claim of one Chabolla; and in such cases the subsequently acquired title, other than the one embraced in the covenant, does not, by operation of law, inure to the benefit of the vendee.

But it is a well settled principle that mistakes in written instruments may be corrected in a Court of equity. Indeed, the reforming of mistakes in instruments is a favorite branch of equity jurisprudence, and is too familiar to the Courts to need the citation of authorities in support of it. It is too plain to admit of doubt that, as against Ruckle, a Court of equity has the power to reform the mortgage, on the application of either Peter Quivey, his vendee Ward, or any one deriving title under him. But it is said the mortgage cannot now be reformed, because it has become merged in the judgment of foreclosure, and that it is not competent for a Court of equity to reform the judgment and the Sheriff's deed. We have been referred to no authorities in support of this proposition, and, on principles of reason and justice, we do not perceive why a Court of equity may not reform mistakes in judgments or decrees, in like manner as in written instruments. But it is said there was no mistake, either in the decree or Sheriff's deed, which followed the description in the mortgage, and could not have done otherwise; and consequently there is no mistake to reform in either of them. As well might it be claimed that if there be a mistake in the first of a series of conveyances, which was carried out through all the subsequent conveyances, that the Court could only correct the mistake in the first deed; and that, in fact, there was no mistake in the subsequent deeds, which were correctly copied from the first, as they were intended to be.

But a Court of equity does not administer justice on these narrow principles. It will not only go back to the original error and reform it, but will administer complete justice, by correcting all subsequent mistakes which grew out of and were superinduced by the first. It would be a vain thing to reform the first and perpetuate the last, by refusing to disturb it. The rule in equity is to do nothing by halves; but, in proper cases, to administer a full measure of relief, so as to avoid circuity of action and promote the ends of justice.

On the whole, we are satisfied the intervenor is entitled to the relief demanded; but inasmuch as the Court below has made an erroneous finding in respect to the admissibility in evidence and legal effect of the record in the foreclosure suit, the judgment is reversed and new trial ordered, and the cause remanded for further proceedings in accordance with this opinion. Remittitur directed to issue forthwith.

So ordered, and that the judgment herein be entered as of January 31st, 1869, and that the remittitur issue forthwith.