Argued September 6; reversed October 8; rehearing denied
November 5, 1935

DOERFLER ET UX. *v.* RICHMAN ET AL.

(49 P. (2d) 988)

*Guy O. Smith*, of Salem (Walter Fuhrer, of Salem, on the brief), for appellants.

*F. C. Heffron*, of Eugene (Immel & Evans, of Eugene, on the brief), for respondents.

RAND, J. In this suit the plaintiffs are seeking to reform and foreclose a real estate mortgage which erroneously described the property intended to be mortgaged as a part of section 26, township 17 south, range 4 west, W. M., whereas it was located in section 23 of said township and range. The description of the mortgaged property as contained in the mortgage is as follows:

"Beginning at a point on the north line of Lot 1, Section 26, Township 17 South, Range 4 West of the Willamette Meridian, Oregon, 16.256 chains West of the Northwest corner of the Solomon Zumwalt Donation Land Claim No. 41, in said Township and running thence South parallel to the West line of said Donation Land Claim No. 41, 26.51 chains; thence East 0.286 chains; thence South 4.00 chains to the middle of the County road; thence along the middle of the County road North 87 degrees 25' West 10.844 chains; thence North 30.05 chains; thence East 10.57 chains to the place of beginning, containing 32.00 acres of land, more or less, in Lane County, Oregon."

This mortgage was given on July 29, 1925, by the defendants Arthur Richman and Hazel Richman, his

wife, hereinafter referred to as the mortgagors; to Hawkins & Roberts, Inc., to secure a loan of $3,000, and, before it became due, was by Hawkins & Roberts, Inc., assigned to Martin E. Smith and by him to the plaintiffs. It contained the following covenant of warranty:

"And the said party of the first part for themselves, their heirs, executors, administrators and assigns hereby covenants with the said party of the second part, its successors and assigns, that they are lawfully seized in fee simple of the aforesaid premises, has good right and lawful authority to encumber or sell and convey the same; that they are free from all encumbrances; that the said party of the second part, its successors and assigns shall quietly enjoy and possess the same; and that the said party of the first part, their heirs and assigns will forever warrant and defend the title to the same unto the party of the second part, its successors and assigns against any and all lawful claims of all persons whomsoever."

Some two years prior to the giving of this mortgage, David and Mary Humphrey, the father and mother of Mrs. Richman, sold and conveyed by deed to said mortgagors the 32-acre tract of land in section 23 which the mortgagors intended to mortgage to Hawkins & Roberts, Inc., but, in said deed, they erroneously described the land so conveyed as being in section 26 instead of section 23. That they intended to convey to their daughter and son-in-law the 32-acre tract in section 23 and that their said grantees intended to mortgage that particular tract of land is clearly established by the description contained in the deed which is identical to that contained in the mortgage. Both of these instruments recite that the beginning point of the land conveyed in the one case and mortgaged in the other is a point "16.256 chains West of the Northwest

corner of the Solomon Zumwalt Donation Land Claim No. 41, in said Township and running thence'', etc. Only one point can answer that description and when that point is identified and made certain, it shows that the land referred to in both the deed and the mortgage is in section 23 and not section 26, and is the particular tract of land which the mortgagors intended to mortgage. That fact is further established by the evidence which shows that at the time the deed was given, the Humphreys owned the 32-acre tract of land in section 23 and did not own any land whatever in section 26, and, further, by the fact that at the time the mortgage was given neither of the mortgagors owned any land in section 26, but were in possession and claimed ownership under their deed to that particular tract of land in section 23.

■ If there could be any further uncertainty as to the lands which the mortgagors intended to mortgage, it is settled by the undisputed fact that, before executing the mortgage, they pointed out and stated that this particular 32-acre tract of land in section 23 was the land they proposed to mortgage as security for the loan. This entitles the plaintiffs to a reformation of the mortgage and to its foreclosure unless some insurmountable reason exists for denying that remedy to the plaintiffs. Speaking of mistakes of this character, the court, in *McGehee v. Lehman, Durr & Co.,* 65 Ala. 316, 319, said:

"Mistakes of the numbers of lands, as they are known in the surveys of the government, are of very frequent occurrence, and are to be found in many muniments of title. They rarely mislead or deceive, because it is not on them generally, but on other sources of identification, reliance is placed. The possession of the grantor, undisturbed, and not questioned by a known adverse claim, is the fact which is generally regarded."

The defendants contend, however, that, for reasons which will now be stated, the plaintiffs are not entitled to have the mortgage reformed and then foreclosed. In their answers, the two mortgagors and Mary Humphrey allege that David Humphrey, one of the defendants named herein, died testate on March 2, 1925, and by the terms of his will, he gave and devised all his property, both real and personal, during the term of her natural life to Mary Humphrey, his widow, and, upon her death, whatever should then remain to his three daughters in equal shares, and that, since the record title to the lands sought to be charged by a reformation of the mortgage was in David Humphrey at the time of his death and is now in his widow and three daughters, because of the erroneous description contained in the deed, the two daughters who are not named as defendants in this suit are necessary parties to this litigation, and for that reason there is a defect of parties defendant.

█ It is true that in the complaint the plaintiffs pray not only that the mortgage be reformed but also that the deed given by David Humphrey be likewise reformed. Before the court could reform the Humphrey deed, the other two daughters would be indispensable parties without which that relief could not be granted, but this objection has no application to the reformation of the mortgage or its foreclosure as against the interests of the mortgagors in the land. In respect to the mortgagors' interest in the land, the other two daughters are not necessary parties and if they have any interest such interest will not be affected by the foreclosure and sale of the mortgagors' interest in the property. As to the two daughters who are not parties to the suits, this proceeding will be *res inter alios acta* and, therefore, their rights in the land, if they have any,

will not be prejudiced or affected in any way. Upon the question of whether they have or have not an interest in the mortgaged land, we, of course, express no opinion, since that matter is not here for decision.

■ It is also contended by the defendants that this mortgage can not be reformed for the reason that Hawkins & Roberts, Inc., knew of this error in the description contained in the mortgage at the time the mortgage was given. This contention is based wholly upon two letters written to Hawkins & Roberts, Inc., by James G. Heltzel, an attorney, to whom Hawkins & Roberts, Inc., had submitted the abstract of title and mortgage for approval. The first letter is dated July 30, 1925, and stated that he had examined the abstract and that it showed the title to be vested in Hazel and Arthur Richman in fee simple free and clear of all incumbrances, except as follows: "1. The last half of the 1924 taxes is not paid. 2. It occurs to me that Lot 1 referred to in the description is located in Section 23 instead of Section 26. I wish you would have the abstracter to put in a plat showing the Donation Land Claim of Andrew J. Zumwalt, Thomas McCord and Solomon Zumwalt; also to show thereon Lot 1 of Section 26; also plat thereon the land described in the caption." The second letter is dated August 12, 1925. In that letter, Mr. Heltzel said he had examined the abstract of title prepared August 3, 1925, and it showed that the title to said premises was "vested in Hazel Richman and Arthur Richman, her husband, in fee simple free and clear of all incumbrances except as follows:". Then follows four numbered exceptions, Nos. 2 and 4 of which are not material here. Nos. 1 and 3 are as follows:

"On page 1 of the last continuation is shown a mortgage made by said owners in favor of yourself for

$3000.00. This mortgage bears date July 29, 1925, and has been duly recorded in the Mortgage Records of Lane County, Oregon, and now constitutes a first valid mortgage lien upon said real property and the whole thereof.

"In the deed to the above named owners, as well as in your mortgages, Lot 1 is mentioned as being in Section 26 whereas it is in 23. There is enough, however, in the description to make the same sufficiently definite and certain and this may be disregarded by you."

These letters wholly fail to show any knowledge upon Mr. Heltzel's part, or that of Hawkins & Roberts, Inc., until after the mortgage had been recorded, of any misdescription contained in the mortgage as to the numbering of the section in which the mortgaged land was situate, and also that in Mr. Heltzel's opinion that the defect in the deed or in the mortgage was of any importance, since as he says: "There is enough, however, in the description to make the same sufficiently definite and certain and this may be disregarded by you."

But even if it should be assumed that Hawkins & Roberts, Inc., took this mortgage with notice of the defect and that in its execution the Richmans had no knowledge upon their part, it could not affect the result of this suit, for "where a person obtains a contract or other advantage by mistake or misstatements innocently made, he can not retain the advantages he has gained when he discovers his mistake. If he does so his innocent misstatement becomes from that moment a deliberate misrepresentation, or in other words fraud.": *Redgrave v. Hurd,* 20 C. D. 1, 12 (51 L. J. Ch. 113); *Scott v. Coulson,* 1903, 2 Ch. 249 (72 L. J. Ch. 600); Kerr on Fraud and Mistake, (5th Ed.) p. 519.

The remaining questions for decision grow out of the fact that this is a second attempt by plaintiffs to

foreclose this mortgage. In the former suit, there was a prayer for foreclosure but not for reformation and there was no mention anywhere in the record of any error in the description of the mortgaged property. The complaint therein, the decree and all proceedings had subsequent to the entry of the decree followed the erroneous description contained in the mortgage and described the mortgaged property as being in section 26 and not in section 23. It was only after these plaintiffs had bid in the wrong property at execution sale for the amount due under the mortgage and the sale had been confirmed and a writ of assistance issued to place the plaintiffs in possession of a part of section 26, that the error was called to the attention of the trial court and the writ recalled. But no sheriff's deed was ever issued and plaintiffs recovered nothing in that suit.

■ Because of those proceedings in the former suit, none of which have ever been vacated or set aside, the defendants now contend that the present suit can not be maintained for the reason that the bringing of that suit was an election by plaintiffs of one of two or more inconsistent remedies, that the mortgage was merged in the former decree, and that this suit amounts merely to a collateral attack upon that decree, and that, by reason thereof, the mortgage debt has been satisfied in full and the lien of the mortgage discharged. We think that none of these contentions ought to be sustained.

The case of *National Bank v. Wentworth,* 28 Kan. 183, is much in point. The opinion in that case was written by Mr. Justice Brewer, who was afterwards a justice of the supreme court of the United States. In that case, a mortgage recited that it conveyed 122.45 acres of land, but, in describing the land by metes and bounds, the scrivener, by mistake, omitted 6.67 acres

thereof. The note and mortgage were transferred to the plaintiff; in a suit brought by another to foreclose a second mortgage on the same land, the plaintiff was made defendant. He answered, setting up the first mortgage but made no reference to the error in his mortgage. A decree of foreclosure was thereafter entered in which plaintiff's mortgage was adjudged a prior lien but by mistake the same omission was carried into the decree which left out 6.67 acres from that portion of the lands upon which his mortgage was adjudged to be the first lien. Upon that decree, an order of sale was issued and placed in the hands of the sheriff to execute and while so in his hands for the purpose of execution the mistake in the mortgage, decree and order of sale was discovered. The plaintiff then brought an action to reform all papers and proceedings. A demurrer to the complaint was filed and overruled by the lower court and, upon appeal, the action of the court was affirmed. In passing upon that question, Mr. Justice Brewer said:

"It is one of the unquestioned powers of a court of equity to correct mistakes; it reforms instruments whenever it satisfactorily appears that by mutual mistake such instruments do not express the agreements of the parties; and this power is not limited to the mere reformation of instruments executed by the parties. It extends to judgments, decrees, and in fact almost every, if not every, paper or document by which the rights of parties are affected. In this case the intent of the parties, the fact of the mistake, and the manner in which it originated, were distinctly stated. Not only that—the fact of the mistake is rendered more clear by the statement in the mortgage of the number of acres conveyed, by the relation of the tract omitted to the balance of the farm, and the situation of the building and orchard. Counsel for the bank argues against this, claiming, first, that the plaintiff is not only seeking to

reform a mortgage, but to overturn a judgment and gain for himself that which by such judgment was given to another party. He claims that a judgment can not lightly be disturbed, and that after a party has had his day in court he must abide by the judgment rendered, except for extraordinary reasons and upon the fullest showing. In support of this, he cites Freeman on Judgments, and other authorities. But a distinction must be recognized between the mere correction of a mistake and the setting aside of a judgment. Where it appears that a distinct question has been presented to the consideration of a court, its ruling had thereon, and that ruling passed into judgment, it is one thing for a party to apply thereafter to have that judgment set aside, and a different ruling made by the court upon that question; but it is an entirely different thing when a party avers that by some mistake the judgment which was entered does not in fact express the intention of the court in respect to its adjudication of the rights of the parties, or that by mistake a matter has been by the language of the decree apparently adjudicated by the court, to which its attention was not called, and upon which it did not intend to make any ruling. Take this very case: if the answer in the foreclosure action filed by the plaintiff had set up the fact of a mistake, and asked an adjudication of plaintiff's rights based upon such a mistake, and the court upon such an answer had made the decree which it did, then an application at this time to correct the decree would require something more than the mere showing that there was a mistake in the mortgage, but would require a further showing of some equitable reasons why the decree of the court once rendered against the claim of a mistake should now be disturbed. We all know that the most careful men make mistakes; that oftentimes those mistakes are not discovered for years. In such case, if application is made immediately upon discovery of the mistake, and it is shown that it was simply a mistake, and no rights of third parties are prejudiced, then it is the duty of courts to intervene and correct the mistake. And it matters not through how many papers or in how many

proceedings the mistake has been carried and appears. See upon this, Blodgett v. Hobart, 18 Vt. 414; Davenport v. Scoville, 6 Ohio St. 459; Cummings v. Freer, 26 Mich. 128; Quivey v. Baker, 37 Cal. 465; 1 Jones on Mortgages, § 98; 2 id., § 1464.''

In *Conyers v. Mericles,* 75 Ind. 443, it was held, and the ruling was affirmed in *McCasland v. The Aetna Life Ins. Company,* 108 Ind. 130 (9 N. E. 119), that where a mistake in the description of mortgaged property is carried into the decree of foreclosure, it may be corrected by reforming and reforeclosing the mortgage.

In *Ray v. Ferrell,* 127 Ind. 570 (27 N. E. 159), the court said:

''The power of courts of equity to reform mortgages and other written instruments to make them conform to what the parties to them mutually intended, but through mistake of fact, or fault of the scrivener, failed to express, is frequently invoked and frequently exercised. That a mistake in a mortgage may be corrected and the mortgage reformed and reforeclosed after foreclosure, and in some cases even after sale, is also settled. Conyers v. Mericles, 75 Ind. 443; Armstrong v. Short, 95 Ind. 326; McCasland v. Aetna Life Ins. Co., 108 Ind. 130; Curtis v. Gooding, 99 Ind. 45; Jones v. Sweet, 77 Ind. 187.

''These authorities, and many others that might be cited, settle the proposition that when, by reason of the mutual mistake of the parties, the description of the mortgaged premises is so defective that no title would pass under sale, or when, by such mutual mistake, land is described which does not belong to the mortgagor, instead of land which does, there may be a reformation even after sale. In such a case there is no merger of the mortgage, and it certainly can not be said there is any satisfaction of the debt, for the purchaser acquires nothing by the sale. Indeed, the sale is a mere nullity.''

In *Zingsem v. Kidd,* 29 N. J. Eq. 516, 522, the court said:

"There can be no doubt about the power of the court to correct the error or imperfection of which the complainant complains, and in respect to which he prays relief. As was said in Loss v. Obry, 7 C. E. Gr. 52, 54: 'To correct deeds for fraud or mistake in them, is one of the ancient and well-established heads of equity jurisdiction, and it is the duty of the court, where such fraud or mistake is clearly proved, to correct it by any means in its power to effect the amendment and the object of it. Mistakes are corrected, even where they occur in the records of proceedings of courts and exist in the records themselves. Such mistakes will be corrected by restraining the parties who might take advantage of them from doing so, or by compelling them to execute proper papers for the purpose of such correction.' "

In *Quivey v. Baker,* 37 Cal. 465, where a mortgage containing an erroneous description of the mortgaged property had been foreclosed and the property erroneously described in the mortgage had been sold, it was held that the mortgage could be reformed notwithstanding the proceedings in the former suit, the court saying:

"* * * But it is said the mortgage can not now be reformed, because it has become merged in the judgment of foreclosure, and that it is not competent for a Court of equity to reform the judgment and the Sheriff's deed. We have been referred to no authorities in support of this proposition, and, on principles of reason and justice, we do not perceive why a Court of equity may not reform mistakes in judgments or decrees, in like manner as in written instruments."

In Jones on Mortgages, vol. 3 (8th Ed.), section 1862, the rule is stated thus:

"* * * A mistake in the description first made in the mortgage, and afterward carried all through the

proceedings and into the sheriff's deed, may afterward, by a proceeding in equity, be reformed in all the instruments so as to make them conform to the intention of the parties. A mistake in the mortgage carried into the decree of foreclosure may be corrected by reforming the mortgage and foreclosing anew.''

Wiltsie states the rule thus:

''Where there has been a mutual mistake in the description of the premises mortgaged, which is not discovered until after the sale on foreclosure, the judgment and sale may be set aside and an amended complaint may be filed, so as to obtain a new judgment correcting the description, reforming the mortgage and directing a new sale, providing the property was bought in by the mortgagee at the foreclosure sale, on the principle that where the plaintiff in a foreclosure has become the purchaser and has not parted with his interest, the decree may be opened by the court which granted it, if the error can not be corrected on a rehearing or upon a bill to review; or a new action may be maintained to correct the misdescription.'' I Wiltsie on Mortgage Foreclosure (4th Ed.), section 123.

The decree of the court below will, therefore, be reversed and, since we are unable to determine from the record before us what amount is due under the mortgage, the cause will be remanded to the court below with directions to enter a decree reforming the mortgage and then foreclosing it, and it is so ordered.

ROSSMAN, J., not sitting.